Nash, C. J.
The action is on a sealed instrument called a single bill, not assignable at common law, but made so by Statute. A man by the name of Ellison is tlie principal, and it is admitted that the present defendants were his sureties. The bond is made payable to the plaintiff as a guardian, and intended to raise money for the use of Ellison. It was executed by the defendants and Ellison, and sent by an agent to the plaintiff, who *141 refused to accept it. Subsequently it was sent back to her by Ellison, with the endorsement as it now appears, written by him, with the request to her to sign it, for that Respass, for whose benefit the action was brought, would then advance the money upon it. She did so, and the sole inquiry presented to us, is as to the legal validity of the instrument. £
Delivery is an essential part of every deed, and as there is no set form of words or of acts by which it may be done, any words or acts on the part of the obligor or grantor, which show the ani-nvas disponendi, will be sufficient. As if a deed be sealed and lying on a window, and the grantor say “there it is, take it as my deed,” or, “ this will serve ” — these are good deliveries. (Shep. Touch. 124; Thomas’ Coke, 2 vol. 276.) It is not pretended that when first presented to Mrs. Parker, there was any delivery, for she expressly refused to accept it; and acceptance by the grantee or obligee, is as necessary to a valid delivery as the transfer on the part of the grantor or obligor. Woodman v. Coolbroth, 7 Greenl. Rep. 181. But it is agreed that the second delivery was completed by the endorsement of the obligee. Without enquiring whether, under the special circumstances of this case, her endorsement was an acceptance or not, we think it was not such an acceptance as bound these defendants. We have seen that the consent of the maker of a deed is essential to a delivery. If tire circumstances go to show that he did not consent, it is not his deed, even though he signed and sealed it, and was bound by a previous contract to deliver it. Coolbroth’s case, supra. If a man throws a deed on the table, and says nothing, and the other party takes it, this does not amount to a delivery, unless the jury find it was put therewith an intent to deliver. Owen, 95; 1 Leon. 140; 1 Touch. 124, n. 28. If a patron draws a presentation in writing and puts his seal to it, and leaves it in his study, and the party for whom it is prepared gets it without the license or privity of the patron, and brings it to the Bishop, and is thereupon instituted and inducted, it is all void. (Yelver-ton, 7.) Where the first delivery of a deed fails for want of acceptance by the grantee, then a neiv- delivery must be made; otherwise the deed is void. 13 Yin. Abrid, title Deeds, n. 2 p. 27. What are the circumstances of this case? The instrument do *142 dared on was signed and sealed by Ellison and the two defendants, for the purpose of borrowing money from the plaintiff, Mrs. Parker. She refused to accept it. It was then functus officio, and to give it vitality a second or new delivery was necessary. To this second or new delivery the assent of the defendants was necessary, so as to bind thgm. There is nothing in the case to show that they did so assent; on the contrary, there is much to show they never did. The bond is dated the 26th of May, 1848, payable one dajr after date, and the money was for the use of Ellison, as we understand. On the 3d of June following, eight days thereafter, it is endorsed to Respass by Mis. Parker, the ob-ligee. It does not appear that the present defendants knew that the money was not received from her upon the first application. Again, when the instrument was presented to Mrs. Parker the second time, it was not for the purpose of getting the money from her, for she had refused to advance it, but from Respass, who actually did advance it to Ellison — -he was, in substance, the ob-ligee. If the present defendants did know that it could not be procured from Mrs. Parker, but that Respass was to advance it, why was not the instrument made payable to the latter. The endorsement gave to Respass no additional security, for it discharged Mrs. Parker from all responsibility. It is obvious that Ellison managed the latter part of the business without consulting the defendants. If he could, without a renewed authority from the defendants, deliver it eight days after the first, why not in eight months ? The instrument in its original concoction was not intended by the defendants to be thrown into market to raise funds from any one who would advance them; but from a specified individual, and that person refusing to lend money upon it, it must be shown that the defendants agreed to the new intent, that is, to becoming bound to Respass which does not appear.
But it is argued on behalf of the plaintiff, that as by our Act of Assembly, bonds are made negotiable, that therefore they are transferable by endorsement as bills of exchange and notes of hand, and are governed by the same rules and regulations. That is true: after the endorsement, the laws governing bills of exchange ánd promisory notes do apply to them. But still the instrument being a sealed instrument must possess all the requisites to make *143 it a good deed. If it be deficient in any such property, the endorsement cannot supply the defect: it cannot make that legal which never was so. Upon this point we consider the case of Marsh v. Brooks, 11 Ire. 409, full authority. In replying to this particular argument, the Court say the instrument must be a perfect bond for money, before it can be negotiated; and further, although the law of the State makes bonds negotiable, yet their nature in their inception, and before endorsement, is not touched by the Statute, and remains as at common law.
We think there is error in the judgment below.
Per .Curiam. Judgment reversed, and venire de novo awarded.