BYRON D. MINOR, Appellant, *vs.* WILLOUGHBY & POWERS, Respondents.

A appointed B as his agent to sell certain real estate, the appointment being by letter, signed by A, but not under seal. B, as such agent, gave an executory contract in writing, (to wit, a bond for a deed,) on behalf of A, to the Respondents, for the sale of a lot in St. Paul. The obligees complied with the terms of the contract, on their part, and demanded a deed. A refused to execute it, on the ground that B had not sufficient authority to execute the contract: *Held,* That the executory contract executed by B, as agent, was binding upon his principal, and that the obligees therein were entitled to a specific performance.

Even if the acts of an agent are without authority under the power given by the principal, yet distinct ratification of such acts by him, will bind him.

Whenever a purchaser claims an equity as against another party, from want of notice of the rights or equities of such party, his allegations must be positive and precise, and negative the possibility of his having knowledge of such rights and equities before purchase. He must not only deny any knowledge of the title of the adverse party, but he must also deny any knowledge of circumstances charged, from which notice may be reasonably inferred.

To constitute a *bona fide* purchaser for a valuable consideration, without notice, he must not only be without notice of other rights and equities at the time of his purchase, but also at the time of the actual payment of the money; and to constitute a valuable consideration, money must be paid, or the party have parted with its equivalent, which he had in his possession.

This was an appeal from the judgment and decree of the District Court of Ramsey County. The opinion of the Court recites the facts involved in the points decided.

The following are the points and authorities relied upon by the Counsel for the Appellant:

*First.*—Richard Chute was not the Attorney in fact authorized or empowered as such to bargain, contract, sell or convey the lot in question, or any other real estate for or in the name of William G. Ewing the owner, or for the firm of W. G. & G. W. Ewing; and did not have or possess any legal right, power or authority to bargain or sell the same.

*Second.*—That Richard Chute had no right, power or authority whatever to substitute, constitute or appoint David Olmsted an agent to sell the lot in question, or any other real estate of Wm. G. Ewing or of W. G. & G. W. Ewing, and the letter from Chute to Olmsted, dated August 9, 1849, marked "Exhibit A," did not convey any legal right, power or authority to Olmsted to contract, bargain or sell the lot in question or any other real estate. *See Story on Agency, p.* 54, *Sec.* 49, *and notes; Same, p.* 183, *Sec.* 146 ; *Same, Sec.* 13; 9 *Wendell p.* 75, 76, 77, *Blood vs. Goodrich et al.;* 5 *Hill p.* 113, *Lawrence vs. Taylor;* 20 *Wend. p.* 258, *Wells vs. Evans; Dunlap's Paley's Agency, p.* 156 *to* 158 *and notes;* 13 *Johnson* 307, *White vs. Skinner;* 4 *Pick.* 160, *Tolman vs. Emerson;* 4 *Monroe* 41 *and* 392.

*Third.*—If Chute had been duly appointed and constituted the agent and attorney in fact of Ewing, to sell and convey the premises in question, and possessed the authority and right to do so, still he had no power or authority whatever to sub-

stitute and appoint Olmsted or any other person to do and perform the same acts without having express authority of substitution under seal.

The authority to an agent being a trust delegated to and reposed in him personally, cannot by him be delegated to another to perform. *See* 2 *Kent's Com.* (4th *Ed.*), *p.* 633; 1 *Livermore on Agency*, *p.* 54-56, *Sec.* 5; 1 *Hill Rept. p.* 505, *Com. Bank vs. Norton;* 12 *Mass. Rept. p.* 237, *Emerson vs. Hat Co.;* 4 *Mass. Rept. p.* 596 *Teppets vs. Walker et al.; Story's Agency*, *p.* 16, *Sec.* 14; 26 *Wendell* 493, 494, *Lyon vs. Jerome.*

*Fourth.*—The Bond (or instrument in writing) from David Olmsted to the Plaintiffs, dated 13th of March, 1850, is undoubtedly the bond of Olmsted, and may be valid and binding against him to the extent of the penalty fixed in it, but is not the bond, act or deed of Ewing, and he was not bound by it. *See* 4 *Mass. Rep.* 596, *Tippets vs. Walker;* 5 *Mass. Rep.* 24-40, *Bluarge vs. Hovey;* 20 *Wendell Rep.* 258, *Wells vs. Evans.*

*Fifth.*—The Bond (or Instrument) made and delivered by Olmsted to the Plaintiffs, on the 13th of March, 1850, marked " Exhibit B," was not entitled to record; and such an instrument could not be legally or properly recorded under the Statute law then in force in Minnesota, because the same was not acknowledged or proved, and did not have two subscribing witnesses, therefore the recording of the same was not notice, actual or constructive, of its existence or contents for any purpose whatever. *See Statutes of Wisconsin of* 1839, *page* 179, *Sec.* 10, *then in force in Minnesota.*

*Sixth.*—That the said bond (or instrument) of the 13th of March, 1850, was void. *See Provision of Statute above cited; Laws of Minnesota* 1849, *p.* 134, *Sec.* 10. *See Section* 10 *of the Organic Act of Minnesota, containing the laws of Wisconsin in force in Minnesota.*

*Seventh.*—That the pretended contract, bond or instrument in writing made by Olmsted on the 13th of March, 1850, to sell and convey the said lot in question to the Plaintiffs, was made without authority, and was not at any time thereafter assented

to, ratified or adopted by the owner thereof, Wm. G. Ewing, or any one else authorized by him or in his behalf, but on the contrary he objected to and refused his assent thereto, or to sanction the action and acts of Olmsted relating to the same, as soon as he was advised or apprised that such contract had been made by Olmsted. (See the evidence.)

*Eighth.*—That if the lot in question was in equity, the property and estate of the late firm of Wm. G. & Geo. W. Ewing, neither Wm. G. Ewing or Geo. W. Ewing alone as one of the copartners of the firm of W. G. & G. W. Ewing, could make or execute any valid conveyance by contract, deed, or otherwise, of any part or portion of the real estate belonging to said firm, to convey the same, and could not execute a power of attorney, thereby conferring power and authority upon an agent or attorney in fact to negotiate, bargain, sell or convey the same. *See* 9 *Wend. Rep. p.* 75, 76, 77, *Blood vs. Goodrich et al.;* 1 *Wend. Rep. p.* 431, *Van Ostrand vs. Reed;* 5 *Mass. Rep. p.* 40, *Benargee vs. Hovey et al;* 5 *Binney* 613; 7 *Taunton* 207; 1 *Yates* 200; 3 *Com. Law. Rep.* 54; 1 *Comyn's Digest Ch.* 5; 1 *Wendell* 326, *McBride vs. Hogan;* 2 *Caine's Repts.* 254, *Green vs. Beals;* 3 *Johnson's Cases* 180, *Clement vs. Brush;* 2 *Johnson's Cases* 213, *Taunton vs. Goodrich et al.*

*Ninth.*—Because the Court below did not find or state conclusions of the fact or the facts found or conclusions of law, in the case, or make any finding of the same or decision thereon, and the finding and decision professing to have been made in this case is wholly insufficient and nugatory. *See Statute of Minnesota.*

*Tenth.*—That the judgment and decree below in this cause is unsupported by the evidence, and contrary to the law of the case.

The following are the points and authorities relied on by Counsel for the Respondent :

*First.*—The equitable title to the property at the time of the execution of the bond to the Respondents, was in W. G. & G. W. Ewing. Chute was at the date of the letter of

Attorney to Olmsted, and for a long time had been the general and confidential agent of the firm of W. G. & G. W. Ewing, throughout the Northwest, buying and selling land for them, &c. Such agency was and had been notorious, and was sufficient, (especially in view of the letter received by him from G. W. Ewing shortly previous to that date,) to authorize the making of that letter of Attorney. The bond or contract of sale was made in pursuance of that authority, and the Respondents fulfilled the terms of the contract on their part in all respects.

*Second.*—But even if the act of Olmsted in making the bond was not authorized at the time, it was subsequently fully ratified by W. G. Ewing—for,

1. He (Ewing) was fully advised of the transaction in June following the sale, and his failure *at that time* to dispute or question the *authority* of the agent, operates as a ratification. *Story on Agency*, (*4th Ed.*) *Sec.* 250, 253 *and* 258; *Johnson vs. Jones*, 4 *Barb. S. C. Rep.* 373; *Cairnes & Lord vs. Bleecker*, 12 *John. R.* 305; *Vianna vs. Barclay*, 3 *Cow. R.* 283; *Dunlap's Paley on Agency*, *p.* 172, *note q;* 2 *Kent's Com.*, *p.* 616 *and cases there cited; Benedict vs. Smith*, 10 *Paige* 127.

2. He instructed Babcock if he could not persuade them to take a lease, to receive of them the purchase price when due. Babcock in pursuance of those instructions received the purchase price of the premises, paid it over to Chute, the general agent, advised Ewing of the fact by letter, and told him the Respondents wanted their deed, received a letter from Ewing acknowledging the receipt of his, and requesting him to fill up and send on for execution a deed of the premises to Willoughby & Powers, which he did; and Chute charged himself with the money upon the books of W. G. & G. W. Ewing. This was as full and complete a ratification of the sale as it was possible to make. *Dunlap's Paley on Agency*, *p.* 172 *and cases cited; Story on Agency*, *Sec.* 249 *and* 252, *and cases cited.*

*Third.*—The Defendant is not entitled to consideration as a

*bona fide purchaser* of the property for a valuable consideration, *without notice* of the Plaintiff's rights.

The bond to the Plaintiffs was recorded in June, 1850, but not having been properly acknowledged, the record probably could not operate as constructive notice to any one. But the Defendants' deed bears date September 27th, 1850, and was recorded October 18th of that year. His own testimony shows that his pretended purchase was made on the day the deed bears date. He, at that time, and for many years, both prior and subsequently, was the clerk of W. G. & G. W. Ewing, and even up to the time of the trial in the Court below was connected in business with G. W. Ewing, the survivor of that firm. Hence the presumptions are all against his ignorance of the business of that firm.

The Plaintiff's purchase was made 13th March, 1850, and the whole purchase price was paid by them when due, September 1st of that year. They went into possession immediately upon the purchase, and commenced the erection of a building thereon. On the first of July of that year they had erected thereon a building 32 by 56 feet in size, and two stories high—the second story finished off, lathed, plastered, &c., for dwellings for two families, at an expense of over $1,700. Both Defendants on that day moved into it, and from that time for several years lived there with their families, and have ever since been in the actual, open and visible possession and occupation of the premises.

At the date of the deed to the Defendants, they, the Plaintiffs, had paid the full purchase price of the premises, and performed the contract on their part in all respects. They were, therefore, the absolute owners, in equity, of the property—the mere naked legal title remaining in Ewing; they had besides expended in permanent improvements upon the lot at least $1,700, and were then actually residing with their families upon it. A stronger equity cannot well be imagined—a more open, notorious and visible possession is impossible.

Such possession was notice to the world of the intent of the possessor's extent in the premises, and the Defendant was bound to inquire into and inform himself of the interest of

the Plaintiffs in these premises before purchasing of Ewing. 4 *Kent's Com.* 179; *Willard's Eq. Jurisprudence* 253; *Grimshaw vs. Carter*, 3 *Paige* 437 *note;* *Tuttle vs. Jackson*, 6 *Wend.* 226; *Daniels vs. Davidson*, 16 *Vesey R.* 254; *Chesterman vs. Gardener*, 5 *John. Ch.* 33; *Troup vs. Harlburt*, 10 *Bur. S. C. Rep.* 358; 1 *Story Eq. Jur., Sec.* 396.

Again—the Defendant's own testimony shows that he was fully advised of the Plaintiffs' claim in the spring of 1854, and that he paid no part of the purchase price until several months afterward. Indeed, his own testimony shows that he has never *actually paid* anything for the property; the consideration at most was a *prior indebtedness*, and he has lost or parted with nothing.

To constitute a *bona fide* purchaser for a *valuable consideration without notice,* he must be without notice, not only at the execution of the deed, but *at the time of the actual payment of the money.* *Willard's Eq. Jurisprudence, p.* 256; 2 *Story's Eq. Jurisprudence, Sec.* 1502; 10 *Paige's Rep.* 180; *Jewett vs. Palmer*, 7 *John. Ch.* 67.

*Finally*—It is submitted that there is nothing before this Court for review except the pleadings, the decision of the Court below and the judgment; and no exception having been taken to the decision in the Court below, the only question for this Court is whether the judgment is supported by the pleadings, assuming all the issues to have been established in favor of the Plaintiffs. 1 *Minnesota Reports* 297, *Claflen et al vs. Lawler.*

And even if the testimony is to be considered in this Court, the objections and exceptions made before the referee must be deemed to have been waived in the Court below, as none of them were raised or passed upon, at the final hearing in that Court.

M. E. AMES, Counsel for Appellant.

BRISBIN & BIGELOW, Counsel for Respondents.

*By the Court*—ATWATER, J.  In March, 1850, one David

Olmsted executed and delivered to the Respondents a bond for a deed of the lot in question, signed by himself as one of the obligors and by William G. Ewing by said Olmsted as his attorney in fact, as the other obligor. The bond was conditioned for the execution of a deed to the Respondents by the said Ewing, (who held the legal title to the lot,) upon the payment by the Respondents to said Ewing of the sum of three hundred dollars, on or before the 1st day of September, 1850, that being the price agreed upon for the lot. The complaint alleges that the Respondents, immediately after the execution and delivery of this bond, went into possession of the premises described in the bond, and commenced the erection of buildings thereon for business purposes, and have ever since occupied the premises for such purposes, and have expended some three thousand dollars thereon. The three hundred dollars was paid before it fell due, and the obligees thereupon demanded a deed of the lot described in the bond. Ewing refused to execute a deed, claiming that Olmsted had no authority to execute the bond for him, nor to sell the property. The first question presented, therefore, is whether any valid title or interest in the lot passed to Willoughby & Powers by virtue of the bond executed by Olmsted.

It appears from the testimony that Olmsted never had a properly executed power of attorney from Ewing for the conveyance of land. The only authority (as he stated in his testimony) which he had for the execution of the bond, was a letter of which the following is a copy:

"St. Paul, Aug. 9, 1849.

"David Olmsted, Esq.—
                    "Dear Sir:
                              "You are hereby constituted my agent to lease and collect rents on my property in St. Paul, and on lands in its vicinity. You are also constituted agent for the sale of the same.
                    "Yours, Resp'y,
                              "William G. Ewing,
                                   "By Richard Chute."

At the time Mr. Chute wrote this letter, he was a partner of W. G. and G. W. Ewing, (the name of the firm being Ewing, Chute & Co.,) and was also the general agent of W. G. and G. W. Ewing, having charge of their business in the Northwest. It also appeared that the lot in question was the property of W. G. & G. W. Ewing, in fact, the deed having been taken at the time of purchase in the name of W. G. Ewing for convenience in selling. Mr. Chute testified that he had charge of the business of the Ewings in Minnesota, and bought and sold lands for them here; and that he received a letter from G. W. Ewing, directing him to sell all their property in Minnesota, and that it was in pursuance of those instructions, that he wrote the letter above quoted to Olmsted, constituting him the agent of Ewing to lease and sell real estate. It does not appear that Chute had any properly executed power of attorney to convey real estate in Minnesota, although he had held such authority to convey real estate for the Ewings in other places.

The bond executed by Olmsted was an executory contract for the conveyance of land. Such a contract, to be valid, is required by the Statute of Frauds to be in writing, but is not required to be under seal. (*Stat. of Min.*, *p.* 457, *Sec.* 8.) And it is held, that if the contract may be made without deed, the seal shall not prevent its enuring as a simple contract, though the authority be by parol, or merely implied from the relation between principal and agent, as if they be partners. (*Laurence vs. Taylor*, 5 *Hill*, 113.) And in Paley on Agency, note on page 158–160, it is said that " upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them, or upon any agreement not to be performed within a year, although the several agreements recited must be in writing, signed by the party or his agent thereunto lawfully authorized, the authority is not required to be in writing. And therefore the authority to contract for a lease or other interest in land, need not be in writing, though the authority to sign the lease or instrument by which the interest passes must be so."

An agreement by Ewing to sell the lot in question, would

have been valid and binding on him by an instrument in writing not under seal. Such an instrument, executed by an agent properly authorized, would be equally binding on the owner, and an authority to give such instrument need not be under seal. Was such authority given to Chute? We think it was. Mr. Chute states in his testimony, that by letter of G. W. Ewing, he was instructed to sell all the real estate of the firm in Minnesota, and that it was in pursuance of those instructions that he appointed Olmsted agent for the sale of these lands. It may be urged that the letter of Ewing to Chute, if it gave any authority, gave authority to sell the lands, and not to contract for the sale, and having failed to give the legal power actually to convey the lands, from lack of the necessary formality, it failed of its purpose wholly. Such does not seem to be a necessary consequence. The power to sell and convey includes the power to make an executory contract for the sale and conveyance, but the power to do the latter does not necessarily include that to do the former. The testimony stands undisputed, that Ewing had requested Chute as the agent of the firm to dispose of their real estate in Minnesota, and that Chute acted in accordance with these instructions in contracting (through Olmsted) to sell this lot to the Plaintiffs. The testimony also shows that the lot was purchased by the Plaintiffs in good faith, for a fair and adequate consideration, and that they immediately proceeded to make valuable improvements on the property. The equities are all in their favor, and the objection of the Defendant wholly technical. It is based on the ground that the owner of the lot had not given the requisite legal authority to execute an instrument of conveyance of the premises, under seal, not that he had given no authority at all to sell, or contract to sell. If force can be given to the authority which Ewing did give, it would manifestly be in furtherance of justice to do so. This is evidently the doctrine in the case of *Laurence vs. Taylor*, above cited, in which, while it is held that a speciality, executed by an attorney, cannot operate as such in any case unless his power be under seal, yet even in such case it does not follow that it shall not operate at all. And in that case it was held, that it might

enure as a simple contract, the Court also citing, in support of this doctrine, *Story on Part.* 197; *Anderson vs. Tompkins*, 1 *Brock C. C. R.* 462, *per Marshall, C. J.;* See also 2 *Kent, p.* 614, *6th Ed.; Newton vs. Bronson*, 3 *Kernan*, 587.

If, however, there be any doubt as to the extent of the original authority given by G. W. Ewing to Chute and through him to Olmsted for the sale of the premises in question, we have none as to the subsequent ratification of the contract by Ewing, after the same was made known to him. It is true that he demurred to executing the contract by making a deed for the lot, not on the ground, however, that he disputed the authority of Chute to make the executory contract, but on the ground principally of inadequacy of consideration. The testimony shows that Ewing was in St. Paul subsequent to the making of the contract, and that he then expressed dissatisfaction with the sale of the lot, and that he endeavored to persuade Willoughby & Powers to accept a lease of the premises, but not succeeding, stated to Olmsted, (as appears from the testimony of that witness,) "that he would give a deed—that the consideration was too small, and he wanted to get the land back again from Willoughby, but if he could not get it back he would give a deed." Of course he could not get it "back" unless he had parted with it, and it is clear that he recognized at least some authority in Olmsted in contracting for the sale of the lot. He (Olmsted) further states that "he (Ewing) never found any fault with my sale—on the contrary, from his general conversation he expressed approval." Mr. Chute, who war a partner of, and the agent of the Ewings in Minnesota, testifies to conversations with W. G. Ewing in the summer of 1850, about the lot in question, the substance of which was, that Ewing seemed vexed at the sale, and was anxious to have Willoughby & Powers accept a lease, but it does not appear that he denied that he had given Chute instructions to sell the real estate of the firm in Minnesota. He (Chute) also states that he received the money for the lot, (through L. A. Babcock, Esq., the agent of Ewing to whom it had been paid,) and charged himself with the amount in the books of the firm of W. G. & G. W. Ewing.

A. Willoughby, one of the Plaintiffs, also testifies, that he had several conversations with Ewing in the summer of 1850 about the lot, that Ewing wanted to buy the lot back and wanted witness to give it up, and offered him $800 for the lot, and a lease of the same for ten years, which was refused.

Mr. Babcock testifies that he saw W. G. Ewing in the month of June, 1850, and was employed by him as the attorney in fact of Ewing for the transaction of certain business. "That as attorney in fact he had instructions to present a lease to Willoughby & Powers and have them execute it if they would, and if they executed it, to retain the note until further orders; if they did not execute the lease, I was to receive the money on the note if they paid it." He also states that he notified the Ewings by letter of the payment of the note, and that the receipt of the letter was acknowledged by one of the firm, and that he was instructed by them to fill up a deed of this lot to Willoughby & Powers, and send to them, which he did.

This testimony, with considerable more of the same tenor, stands substantially uncontradicted, and leaves no doubt that Ewing not only recognized the authority of Chute (and through him of Olmsted) to dispose of the property, but is a ratification of the contract made by Olmsted, even if he had no authority originally to contract for the sale of the lot. It is seldom that a clearer case of the ratification of the acts of an agent is presented, and under the authorities there can be no question but that the principal must be bound by it. *Johnson vs. Jones,* 4 *Bar.* 369; *Dunlap's Paley Ag.* 172, *and note;* 12 *Johns.* 300; 2 *Kent, p.* 616, *and cases cited; Story on Agency,* 239 *et seq.*

The property in question was sold to the Defendant Minor, by W. G. Ewing by deed bearing date September 27th, 1850, and there remains the farther question, whether Minor is a *bona fide* purchaser for a valuable consideration without notice. The bond given by Olmsted to Willoughby & Powers was not acknowledged, and had only one subscribing witness, and was not therefore entitled to record. And though actually recorded, it could not operate as notice actual or constructive of the contract of sale to the Plaintiffs below. No actual notice to the

Defendant Minor, is shown of this contract of sale previous to the date of his purchase from Ewing, though there may be strong reasons for supposing from the relations existing between the Defendant and the Ewings, that he must have had some knowledge of what had transpired in relation to the premises in question. The Defendant, however, denies that he had any notice of this contract previous to his purchase. But it is alleged in the complaint that " in the month of April, 1850, the Plaintiffs commenced the erection of expensive and permanent structures upon the premises, which have been continually used and occupied for business purposes by the Plaintiffs ever since their erection," etc. Of this fact we must presume the Defendant had notice before his purchase from Ewing, for the denial of the answer is by no means sufficiently definite and specific to rebut such presumption. The statement in the answer is, " that the Defendant admits it to be true that the Plaintiffs have been in possession of the premises described in the complant, and that they have erected a building and improvements thereon, and that they use and occupy the same for business purposes. But the Defendant says he has not any knowledge or information thereof sufficient to form a belief as to when or at what time the Plaintiff went into possession or occupation of the premises aforesaid, or when they commenced making or made improvements thereon, or what amount they have expended," &c.

This allegation of the answer can scarcely be regarded as less than equivalent to an admission on the part of the Defendant, of actual notice of this possession by the Plaintiffs. For whenever a purchaser claims an equity, as against another party, from want of notice of the rights or equities of such party, his allegations must be positive and precise, and negative the possibility of his having knowledge of such rights and equities before purchase. " He must not only deny any, knowledge of the title of the adverse party; but he must also deny any knowledge of circumstances charged, from which notice may be reasonably inferred. This defence never rests on proofs alone. It must always be made as an allegation; and the denial of notice, must be full, positive, and precise.

The rule is necessarily strict; but it imposes no hardship on a purchaser; who is always able to state what he knows, and his ignorance of that which he knows not. (*Hopkins Ch. R. Galatin vs. Erwin* 48; *Mitf.* 215, 216, 1 *John. Ch.* 202, 575, 2 *John. Ch.* 157, 3 *John.* 345.)

Tested by the principles above laid down, the answer is clearly defective and evasive, in denying notice of the Plaintiff's possession of the premises, and of the erection by them of valuable improvements, previous to Defendant's purchase. It simply states that the Defendant is ignorant as to the *time when* the possession of the Plaintiffs commenced, and their improvements were made. The Defendant in his answer does not deny that he had full knowledge of this possession, and these improvements *before he purchased of Ewing*. It is true, that the complaint does not allege that the Defendant had notice of the possession and improvements of the Plaintiffs before such purchase, but in all cases in which a party sets up his title to relief in equity, as a *bona fide* purchaser, without notice, for a valuable consideration, he must deny notice though it be not charged. (1 *John. Ch.* 302, *above cited.*)

The general rule is, that possession of land is notice to a purchaser of the possessor's title. (4 *Kent* 179, *Grimstone vs. Carter*, 3 *Paige* 437, *Tuttle vs. Jackson*, 6 *Wen.* 226; *Chesterman vs. Gardner*, 5 *John. Ch. Rep.* 33, 16 *Ves.* 254, 2 *J. J. Marsh.* 180.) Willoughby and Powers claim the prior equity in the premises in dispute, and were in possession, and notice of that fact by the Defendant was sufficient to "put him on enquiry as to the actual rights of the occupants, and he must be presumed to have purchased with full knowledge of their rights and equities.

But there is another fact in the case which precludes the idea that the Defendant can be treated as a bona fide purchaser for a valuable consideration without notice. The proof shows that the Defendant at the time he made the purchase, gave notes for the purchase money, payable in two and three years. The Defendant was notified by Chute in the spring of 1854, of the existence of the Plaintiffs' claim. The notes were not paid until the fall of 1854, and were then paid by charging

Minor v. Willoughby & Powers.

the amount of the notes to the Defendant on the books of W. G. & G. W. Ewing, and that after the amount so charged, the Ewings were still owing Defendant about six hundred dollars. No part of the purchase money was therefore paid by the Defendant, until after this knowledge in regard to the Plaintiff's claim was obtained from Chute, and no money was ever actually paid by Defendant, credit having been given to the Ewings to the amount of the notes, on their indebtedness to the Defendant. To constitute a *bona fide* purchaser for a valuable consideration without notice, he must not only be without notice of other rights and equities at the time of his purchase, but also at the time of the actual payment of the money. (*Jewett vs. Palmer*, 7 *John. Ch.* 67, *and cases cited;* 10 *Paige Rep* 180 ; *Story's Eq. Jur.* § 396, § 1502, *and cases cited.*) The cancellation of a prior indebtedness is not considered in law as a valuable consideration, in the sense in which the term is used in the books. To constitute this, money must be actually paid, or the party have parted with its equivalent, which he had in possession. In no view which can be taken therefore, can the Defendant be regarded as a *bona fide* purchaser for a valuable consideration, of the premises in question.

The objection is made by the Appellant, that the judgment is irregular because the Court below did not state facts found, and conclusions of law separately, as required by the Statute. To bring this question properly before this Court, it should be upon the denial of a motion to set aside the judgment on this ground, or upon a bill of exceptions, a course which was not pursued in the case at bar. (2*d Selden* 356, 3 *Kernan* 344.) The objection at best, is rather to the form than the substance of the proceedings, and where it is manifest that the judgment must be the same upon the facts and the law, there is no occasion to remand it, to correct the irregularity complained of. (*Stat. Minn. p.* 564, *Sec.* 55.) The judgment of the Court below is affirmed.