## CHARLES WILLIAMS *vs.* CHARLES I. ADAMS.

A prisoner confined in a house of correction under sentence of court, and while there put into solitary confinement for refractory conduct, in accordance with rules established for such cases, cannot maintain an action against the master thereof for neglect to provide for him sufficient food, clothing and fires, if he is kept in one of the usual cells, and ther is no evidence of express malice, or of such gross negligence as to authorize the infer ence of malice.

DEWEY, J. This case presents a question novel in its charac-ter, involving as it does the right of prisoners in our common' jails and houses of correction to institute actions at law against the jailers or masters of the same, to recover damages for al-leged injuries arising from their failure to provide suitable and proper food, clothing and warmth of rooms for such prisoners.

The plaintiff alleges that he has suffered an injury in his feet from want of proper clothing and warmth of room in a cell in the house of correction, into which he was put as a place of sol-itary confinement, by the defendant as master and keeper thereof. It appeared in evidence that the plaintiff, being confined in the house of correction in execution of a sentence, by violating the rules, had subjected himself to punishment therefor by solitary imprisonment not exceeding three days, in due execution of which he was placed by an assistant of the master in one of the usual cells for that purpose. Assuming the facts to be as stated, does this action lie against the master of the house of correc tion ?

We have here no question of personal violence unlawfully inflicted upon the prisoner, or of assault and battery and false imprisonment, or of any want of jurisdiction on the part of the defendant to detain the prisoner in the manner he did. Had a case of that character existed, the defendant might be responsi ble therefor, and his official character and responsibility to the overseers of the prison and to the public would not furnish an answer to an action for damages. The case is of a different character, and is open to much more serious objections than would exist in the cases above stated.

The plaintiff would sustain his case upon the ground that all ministerial officers charged with certain duties, their office being voluntary, and compensation being received for their services, are responsible in a civil action for damages resulting from their negligence or default in the performance of such duties. This as a general proposition, may be true, but, like other general rules, is not of universal application. And none of the cases cited by him involves the charge of a wrong like that for which damages are here sought to be recovered.

The cases cited of actions against sheriffs and their deputies for misfeasance and non-feasance in serving processes committed to them, are very familiar to us. But they are cases of direct personal responsibility in reference to matters wholly in their own charge, and where their responsibility is solely to the individuals affected thereby. We were referred to the cases against selectmen for refusing the vote of a duly qualified voter, which has by this court been considered as affecting so vital a right of the citizen as to authorize an action for such a default. Other courts have refused to sustain such actions, where the act was done in good faith and with no fraudulent or corrupt purpose. *Jenkins* v. *Waldron*, 11 Johns. 114. But the better answer to this class of cases is, that they have no analogy to the present case.

The case of *Henly* v. *Mayor, &c. of Lyme*, 5 Bing. 91, cited by the plaintiff, affirms very strongly the general rule of responsibility of public officers to an individual, for damages resulting from their default in the performance of the duties appertaining thereto. But the case was wholly different from the present, being an action on the case for damages sustained by the plaintiff by reason of their neglect to keep a sea-wall in repair.

That such a general rule exists as to the liability of those voluntarily holding public offices to which a compensation is attached, was fully recognized and applied by this court in the recent case of *Nowell* v. *Wright, ante,* 166.

But while actions have been maintained in the cases above stated, yet it is also true that in other cases where a wrong may be suffered through a default of a public officer, no action would

lie. It would not lie, for example, against a surveyor of high-
ways, for neglect to keep the ways in repair, whereby an injury
was sustained. It would not lie against the town, except by
statute. It does not now lie against a town, for wholly neglect-
ing their public duty to remove obstructions to travel, whereby
the citizen of the town is not able to enter upon and use the
public roads. Nor does an action lie against a teacher of a
public school for refusing to instruct the child of the plaintiff,
whereby he lost the benefit of the school. *Spear* v. *Cummings*,
23 Pick. 224. The declaration there set forth all the facts proper
to be set forth in such case, and concluded, " yet the defendant,
well knowing the premises, would not teach him, but contriving
and intending to injure the plaintiff, refused so to do." The
court held that the action could not be maintained. Many of
the reasons for that decision will be found applicable to the
present case.

The master of the house of correction is not an indepen-
dent public officer, having the same relations to those who are
confined therein that a deputy sheriff has to the parties to a
writ committed to him to serve. The supplies for food, cloth-
ing and warming rooms are to be furnished by him at the pub-
lic expense. The convenience and adaptation of the rooms to
secure the health of the inmates is a matter for which the master
of the house of correction is not responsible. The manner of
warming them may be wholly prescribed by his superiors. So,
" whenever the commissioners of any county shall direct specific
rations or articles of food, soap, fuel or other necessaries, to be
furnished to the prisoners, in any jail or house of correction, the
keeper or master thereof shall conform to such direction," and a
penalty is provided, if he shall neglect or refuse to furnish the
same. Rev. Sts. *c.* 143, § 45. Other duties are as imperatively
required of the master of the house of correction as those of
furnishing food and clothing and warm rooms; many regula-
tions are established for securing health and cleanliness. Rooms
are to be whitewashed with lime twice a year, and walls and
floors once a week between the 1st of May and the 1st of No-
vember, shirts to be washed, and the prisoners shaved once a
15*

week, &c. Prisoners are to be furnished daily with clean water, and all those not in solitary confinement must be served three times each day with wholesome food, well cooked, in good order and in sufficient quantity. § 38.

These are duties required of the master. But if one prisoner can maintain his action against the master for his neglect of duty in providing for the inmates, all others can. The neglect of any of these duties would be a default on the part of the master. As was said by the court in *Spear* v. *Cummings, supra,* "the argument from inconvenience against such an action is extremely forcible." If one may sue the master for neglect to supply wholesome food, well cooked, every other prisoner may do the like. If one may institute an action upon the ground that his room was not kept clean and warm, all others may do the like. But is there no remedy for abuses and misconduct in these respects by the master? Certainly there is. The statute has provided for a board of overseers of the house of correction, who shall see that rules established for the management of the house of correction and the government of the persons confined therein are strictly observed. § 11. And further to give effect to such supervision, the statute provides that the commissioners of the several counties and certain other persons shall be inspectors of the prisons therein, and that they shall inspect the same at least twice in each year, and shall fully examine into everything relating to the government and police thereof; § 28; and the more fully to ascertain as to said matters, provision is made by statute that such inspectors " may converse with any of the prisoners apart and without the presence of any officer or keeper." § 31. For various breaches of duty by the keeper or master, a penalty is provided by a forfeiture of a certain sum to the use of the county. There is also the power of removal of the master of the house of correction, for any default, by the appointing power. In addition to these safeguards for the protection of the prisoners from any personal wrongs, is the appeal to the common law for the punishment of all offences of sufficient magnitude to be thus punished.

We find that it is not universally true, that whenever there is

a breach of public duty by negligence or misfeasance, any party who sustains an injury by it may have his action against the party guilty of such violation. This court, in the case of *Spear* v. *Cummings*, so declared, and applied the law in that case. In a much earlier case, that of *Russell* v. *Devon*, 2 T. R. 667, where the court, on the ground of very great inconvenience, held the action ought not to be maintained, similar views were expressed by the learned judges. Ashhurst, J. said, " But it has been said that there is a principle of law on which this action may be maintained, namely, that where an individual sustains an injury by the neglect or default of another, the law gives him a remedy. But there is another general principle of law more applicable to this case, that it is better that an individual should sustain an injury than that the public should suffer an inconvenience." To this may be appropriately added the remarks of Lord Kenyon, C. J. in the same case : " If this experiment had succeeded, it would have been productive of an infinity of actions. And though the fear of introducing so much litigation ought not to prevent the plaintiff's recovering, if by law he is entitled, yet it ought to have considerable weight in a case where it is admitted that there is no precedent of such an action having been before attempted."

These considerations are applicable to the present case. They are in some respects much graver and more serious here than existed in the case in which they were applied. The effect of maintaining actions like the present would be to transfer to the supervision of the courts of law the question of the proper management of our jails and houses of correction, and require them to pass upon all the alleged abuses arising from neglect by the officers to discharge the functions of their offices properly.

And we cannot think that any such relation exists between a prisoner in a house of correction and the keeper thereof as will authorize a civil action for any such neglects of duty by the keeper as those shown in the present case.

Looking at the present question in all its aspects, the court are of opinion that a person in the house of correction in execution of a sentence of court, and who, while thus confined

under such sentence, by his refractory conduct or violation of the rules of the prison has subjected himself to a temporary solitary imprisonment, cannot maintain an action against the master of the house of correction for mere negligence in not furnishing sufficient food, clothing and warmth of room, while thus in solitary confinement, whereby he suffered and was greatly injured in his feet; it appearing that the prisoner was placed in one of the usual cells for solitary imprisonment, and there being neither express malice shown, nor any such gross negligence as to authorize the inference of implied malice and intention to do the prisoner any bodily injury, beyond what would result from the ordinary effect of proper solitary imprisonment.

*Exceptions sustained.*

*S. H. Folsom,* for the plaintiff, cited, in addition to authorities cited in the preceding case, *Keith* v. *Howard,* 24 Pick. 292 ; *Lincoln* v. *Hapgood,* 11 Mass. 350 ; *Tracy* v. *Swartwout,* 10 Pet. 80 ; *Jenner* v. *Joliffe,* 9 Johns. 381 ; *Lane* v. *Cotton,* 1 Salk. 17 ; *Yielding* v. *Fay,* Cro. Eliz. 569. *Henly* v. *Mayor, &c. of Lyme,* 5 Bing. 91.

*T. H. Sweetser & I. S. Morse,* ( *G. P. Lawrence* with them,) for the defendant, cited *Sutton* v. *Clarke,* 6 Taunt. 44 ; *Tozer* v. *Child,* 6 El. & Bl. 289 ; *Blyth* v. *Birmingham Waterworks,* 11 Exch. 781 ; *Macbeath* v. *Haldimand,* 1 T. R. 172; *Gidley* v. *Palmerston,* 3 Brod. & Bing. 286 ; *Boulton* v. *Crowther,* 2 B. & C. 708 ; *Callender* y. *Marsh,* 1 Pick. 435.