T. C. JOHNSON v. W. B. LASSITER.

(Filed 26 April, 1911.)

1. Notes—"Order or Bearer"—Non-negotiability.
   A note not payable "to the order of a specified person or to bearer" is not negotiable. Revisal, secs. 2158, 2276, 2334.

2. Notes—Non-negotiable—Endorsement—Non-negotiability.
   An endorsement in blank on the back of a non-negotiable note does not render the note negotiable under Revisal, sec, 2159.

3. Notes—Negotiability—"Code Repealed"—Common Law.
   Sections 41 and 50 of the Code are repealed by Revisal, sec. 5453 and therefore have no application upon the endorsement in blank, upon a non-negotiable note, and in respect to matters thereunder arising the rights of the parties must be determined at common law.

4. Notes—Non-negotiable—Dishonor—Notice—Liability of Endorser.
   The endorser of a non-negotiable note in blank after maturity is held to be a guarantor of payment of the paper, and is not entitled to notice of dishonor, or to his discharge from liability by failure of the endorser to proceed promptly against the maker.

5. Same—Statutory Provisions—Interpretation of Statutes.
   The rights of an endorser in blank upon a non-negotiable note are sufficiently protected under Revisal, sec. 2846, providing that a surety or endorser on any note, bill, bond or written obligation, except those held in trust or as collateral, may notify, in writing, the payee or holder, requiring him to bring suit and use all diligence to collect, and if the payee or holder refuses to bring action within thirty days, the surety or holder giving notice is discharged.

APPEAL from *Lyon, J.,* at the October Term, 1910, of GUILFORD.

On the 25th of April, 1907, the plaintiff sold to the defendant W. B. Lassiter a tract of land for $2,000, and accepted in part payment two notes under seal. One of these notes was for $300, and executed 29 December, 1902, payable six months from date to S. H. Carter, and the other was for $200, and executed 17 August, 1903, payable on demand to said Carter.

The name of S. H. Carter was written on the back of each of said notes on 25 August, 1906, and the name of the defendant

was written on the back of each of said notes on 25 April, 1907, the day he bought the land from the plaintiff. The following payments were made on the first note: $25, 8 January, 1905, and $100, 18 January, 1906, and on the second note $25, 10 November, 1904.

The defendant resisted a recovery upon the ground that no notice of dishonor was given him, and because the plaintiff had not prosecuted with diligence his claim against the makers of the notes. The judge presiding held that the defendant was not entitled to notice, and that he was bound absolutely on his endorsement. The defendant excepted and appealed.

*Sapp & Williams for plaintiff.*
*J. A. Spence for defendant.*

ALLEN, J., after stating the case. The paper-writings in controversy are non-negotiable under the Negotiable Instrument Law, because they are not payable "to the order of a specified person or to bearer." (Revisal, sec. 2151.)

This is the construction placed upon this section by Mr. Mordecai in his treatise on the Negotiable Instrument Law, and it is strengthened by reference to sections 2158, 2276 and 2334 of the Revisal. They were not made negotiable by endorsement under section 2159 of the Revisal, providing that an instrument is payable to bearer (5) "when the only or last endorsement is an endorsement in blank."

The term "endorsement" is frequently used to describe the act of writing on the back of a paper, without reference to the character of the paper, but strictly it applies only to negotiable instruments, and as said in Norton on Bills, page 106: "It has its origin in and is confined to negotiable instruments."

It is in this sense it is used in Revisal, sec. 2159. If a broader meaning is adopted and it applies to any non-negotiable instrument, it must apply to all, as there is no qualification in the language used.

These two sections (2151 and 2159), in the exact language contained in our statute, were construed by the Supreme Court of Kentucky in *Wettlaufer v. Baxter,* 125 S. W. R., 741. The Court says: "The negotiable instrument act is not a new law.

It is, with few exceptions, merely the codification of old laws that were in force and effect by virtue of judicial pronouncement or legislative enactment, and generally uniform. . . . If there is any doubt about the meaning of any of its provisions, and that doubt can be solved by a reference to the law-merchant as it was theretofore administered, this law should be looked to, and the act, if practicable, given such a construction as will make it harmonize with the general principles of commercial law in force before its enactment. . . . 'The usual form of negotiable paper is a provision for payment to 'order' or 'bearer.' These or similar words are, in general, necessary to its negotiability and are often required by statute, but a note which is non-negotiable for want of such words is still a valid note and may be declared on as such. Bills payable to bearer were formerly held to be non-negotiable, as being without words of transfer, but they are now recognized as negotiable and transferable by delivery. Making the instrument payable 'to the order of' a person named is the same as to such person 'or order,' and in like manner to a person named 'or bearer' is the same in effect as 'to bearer.' . . . It will thus be seen that it was uniformly held that in order to make a note or bill negotiable, the words 'to order' or 'to bearer,' or equivalent words, must be used in the body of the note. It will be kept in mind, however, that the absence of these words does not affect the validity of a note or render it non-transferable or non-assignable; their only effect is to make the instrument negotiable, and thereby cut off defenses that the maker or either of the parties to the paper might have and make against a holder in due course if the note was not negotiable. The Negotiable Instrument Act does not apply to or affect the rights or liabilities of persons on paper that is not within its meaning negotiable. . . . This note, in our opinion, which was payable to Baxter alone, and did not contain the words 'to order' or 'bearer' was not a negotiable instrument. . . . But the argument is further made that as Baxter endorsed the note in blank—that is, signed his name on the back of it without any other words—he thereby converted the note into a negotiable instrument. It is true that section 9 of the act

155—4

provides that 'the instrument is payable to bearer . . . when the only or last endorsement is an endorsement in blank'; but this does not mean that the endorsement in blank converts a note non-negotiable on its face and, by its terms, into a negotiable note. This construction would enable the person who last signed his name on the back of the note to change entirely the contract as entered into between the parties, and have the effect of making the maker payee, and all prior endorsers liable upon a negotiable instrument, when they intended to and only became liable upon a note that was not negotiable; and this, as can readily be seen, would be a most important and material change in the obligation assumed by them when they signed the paper. To give the act this construction would place it in the power of any endorser who chose to sign his name in blank to change by this act the entire character of the paper as well as to the rights and liabilities of the parties to it. It would make the character of the paper depend upon the manner of the endorsement and not upon the terms expressed in the paper. Thus, if A endorsed it in blank to B, it would be negotiable; but if B endorsed it specially to C, it would be non-negotiable. Manifestly, it was not intended that the mere endorsement of the note by a remote or other endorser should have this effect. When a paper is started on its journey into the commercial world it should retain to the end the character given to it in the beginning and written into its face. If it was intended to be a negotiable instrument, and was so written, it should continue to be one. If it was intended to be a non-negotiable instrument, and was so written, it should so remain. Then every one who puts his name on it, as well as every one who discounts or purchases it, will need only to read it to know what it is and what his rights and liabilities are. In our opinion, section 9 was merely intended to describe or designate the conditions under which a note negotiable on its face might become payable to bearer, and was not intended to apply to a note not on its face or by its terms negotiable."

Nor are they negotiable by endorsement under sections 41 and 50 of the Code (1883), as construed in *Spence v. Tapscott*, 93 N. C., 246, because both of those sections are omitted in the Revisal of 1905, which went into effect on the 1st day of August,

1905, before the writings were endorsed; and section 5453 of the Revisal provides that "all public and general statutes not contained in this Revisal are hereby repealed, with the exceptions and limitations hereinafter mentioned," and these sections are not within· "the exceptions and limitations hereinafter mentioned."

The rights of the parties must, therefore, be determined at common law, which is in force, and the writings, being under seal, are bonds at common law and non-negotiable. *Respass v. Latham,* 44 N. C., 138.

Originally, promises to pay, whether under seal or not, were not assignable nor negotiable, the reason given being that the contract created a strictly personal obligation between the creditor and the debtor, and that to permit assignment or negotiation would encourage litigation.

As trade advanced and mercantile transactions became enlarged, it was found that this rule eliminated one of the principal elements of value, and a custom gradually prevailed among the merchants of negotiating bills of exchange and promissory notes. A dispute, however, arose between the merchants and the law courts as to whether a note was within the custom of the merchants, and *Lord Holt* held in *Clark v. Martin,* 1 Salk., 129, it was not. As a result, the Statute of Anne was passed, which made notes assignable and endorsable, and soon. thereafter it was held that non-negotiable notes, although not mentioned, were embraced in the statutes. Norton on Bills, 6; *Birchell v. Sloarch,* 2 Ld. Ray., 1545; *Smith v. Kendall,* 6 Term, 123. It was also held that notice of dishonor need not be given to the endorser of a non-negotiable paper. Byles on Bills, 447.

In this country there is much difference of opinion as to the effect of the endorsement in blank of a non-negotiable paper.

In *Richards v. Warring,* 1 Keyes, 582 (N. Y.), the Court, speaking of this question, says: "When a party writes his name on the back of a note not negotiable, as there is no contract of endorsement, the courts endeavor to prevent the utter failure of the contract by giving it effect in some other way, as by allowing the holder to overwrite the endorser's name with the real contract implied by law, or recover against him as a maker or guarantor of the note."

In *Sweeter v. French,* 54 Mass., 262, it was held that the endorsee was authorized to write above an endorsement in blank: "For value received, we promise to pay the money mentioned in the within note to T. Ames & Co.," and this case is affirmed in *Bank v. Lincoln,* 85 Mass., 173.

*Billingham v. Bryan,* 10 Iowa, 317, is to the same effect. The Court says: "The question presented in this cause is, whether the endorser of a non-negotiable promissory note is liable to the holder, without demand upon the maker, and notice of non-payment. We think this question has been fully settled by this Court in the cases of *Wilson v. Ralph & Van Shaick,* 3 Iowa, 450; *Long v. Smyser & Hawthorne,* 3 Iowa, 266, and in *Hall v. Monahon,* 6 Iowa, 450, the Court in those cases following the authority as laid down in the case of *Seymour v. Van Shaick,* 8 Wend., 421, in which it is held that such an endorsement is equivalent to the making of a new note, and is a direct and positive undertaking on the part of the endorser to pay the note to the endorsee, and not a conditional one to pay if the maker does not, upon demand, after due notice." See *Helfer v. Alden,* 3 Minn., 236; *Bank v. Falkenham,* 94 Col., 144. In those cases, the endorsements were before the notes were due.

The reason is stronger for holding the endorser liable, and for dispensing with notice to him, and diligence as against the maker, when the note is past due and already dishonored at the time of the endorsement. Under such circumstances, the endorser is held to be a guarantor of payment of the paper endorsed, and not entitled to notice of dishonor, and he is not discharged from liability by failure of the endorsee to proceed promptly against the maker. *Love v. Levillion,* 4 Ark., 83; *Foster v. Tallison,* 43 S. C., 33; *Read v. Cutts,* 22 A. D., 188 (Me.).

As said in Byles on Bills, the endorsee is presumed to have acted on the credit of the endorser.

In *Lilly v. Baker,* 88 N. C., 154, it is decided that one who endorses a non-negotiable instrument is a guarantor; and in *Jenkins v. Wilkerson,* 107 N. C., 707, that the holder can sue at once upon a guaranty of payment; and in *Mudge v. Varner,* 146 N. C., 149, that the obligation of a guarantor of payment, as

distinguished from one for collection becomes absolute at once upon default of the principal. See also *Farrer v. Respass,* 33 N. C., 170, and *Cowan v. Roberts,* 134 N. C., 415.

The question of the liability of an endorser of a non-negotiable instrument did not arise in *Sutton v. Owens,* 65 N. C., 123, relied on by the defendant. In that case, the payee in a note under seal wrote on the back of it: "I guarantee the payment of the within note to Junius La Rogue or bearer," and the only question decided was that the holder could not sue in his own name prior to the statute requiring the action to be brought by the real party in interest.

In the case under consideration, payments had been made on the notes prior to the endorsement, indicating that the holder had been endeavoring to collect, and at the time of the endorsement the defendant received a present consideration for the notes, and they had been long since dishonored. Why should he be notified of facts of which he had full knowledge?

We conclude that no error was committed on the trial, and this conclusion can work no hardship on endorsers, as it is provided in section 2846 of the Revisal that a surety or an endorser on any note, bill, bond or other written obligation, except those held in trust or as collateral, may notify, in writing, the payee or holder, requiring him to bring suit and to use all reasonable diligence to collect, and if the payee or holder fails to bring action within thirty days, the surety or endorser giving the notice is discharged. This affords ample protection to the endorser.

No error.