A. B. THOMPSON, Appellee, v. CEDAR RAPIDS NATIONAL BANK, Appellant.

FEBRUARY 12, 1929.

Barnes, Chamberlain, Hanzlik & Thompson and M. C. Levsen, for appellant.

Thompson, Loth & Lowe, for appellee.

KINDIG, J.—The primary question involved in this litigation is whether or not the defendant-appellant was the plaintiff-appellee's subagent for the purposes of collecting a check from the Commercial State Bank, of Britt. If such subagency existed, appellee was not required to sue the principal agent, but could legally proceed directly against the subagent. *Guelich v. National State Bank*, 56 Iowa 434. Hence, it is important to ascertain whether there was such subagency. Appellee's entire theory of recovery is founded upon that basis. With the principle upon which redress is predicated thus defined, it is necessary to understand the facts out of which the controversy arose.

One R. H. Miller, on November 28, 1925, drew upon the Commercial State Bank, of Britt, his check payable to appellee, in the sum of $1,131.15. That was done for the purpose of paying for certain cattle. Thereafter, on the first day of December, appellee deposited said check for collection with his agent, the Forest City National Bank, which institution accepted said instrument in order to carry out that object. Evidence of this is manifest by the pass book and testimony of the witnesses. At the

time of making the deposit, however, appellee indorsed the check in blank. Upon obtaining the instrument in the manner and way aforesaid, the Forest City National Bank, on the same day, indorsed and mailed it to the appellant, with the following advice:

"Inclosed find [several items, including appellee's check] for collection and credit."

For many months, appellant had been a correspondent depository for the Forest City National Bank. When receiving the several inclosures named, the appellant conditionally credited the aggregate amount thereof to the account of the Forest City National Bank. Accordingly, the Forest City bank drew drafts upon such credit deposit, and these were all honored by appellant. In fact, the withdrawals included all sums represented by appellee's check.

Under date of December 3d, appellant sent appellee's check, together with the others named, to the Commercial State Bank, of Britt, for collection. This institution, being the payer bank, canceled appellee's check, and returned it to the drawer, Miller. Charge thereof was duly made against Miller's account in the Britt bank. Remittance was made to appellant by the Britt bank through the use of a Chicago draft, which was protested when presented for payment, because the Britt bank had closed its doors and had gone into the hands of a receiver.

Following this, appellant charged the account of the Forest City National Bank with the loss, and, in turn, the latter institution charged appellee's account therewith. Suit was first brought by appellee against Miller, who drew the check; but the district court decided that conflict against the former, on the theory that the latter had made payment thereof. Then the present action was commenced, wherein negligence is asserted by appellee: First, because appellant sent the check directly to the Britt bank for collection from itself, rather than through a responsible agent, which existed at that time in the same town; and second, because appellant accepted the Britt bank's draft, rather than demanding and receiving cash, which in a sufficient amount was at that time in the payer bank to the credit of the drawer, Miller. See *Virtue v. Danbury State Bank*, 205 Iowa 392.

Defense was interposed by appellant, which, in view of the amended answer, embraced: First, a general denial; and second,

a plea that the check was received for collection and credit, and handled under the provisions of a receipt sent the Forest City bank immediately after appellant obtained the check. Those provisions of the receipt were that appellant "may send [the check] directly or indirectly to any bank, including the payer, for collection and accept its draft or credit as conditional payment in lieu of cash."

Consequently, in view of the issues thus tendered, it is necessary to decide whether or not appellant is liable as a subagent, as that is the only basis upon which relief is sought.

I. There are two rules in the adjudicated cases concerning the relationship between a depositor for collection and the collecting bank, with its correspondent agencies. *Guelich v. National State Bank,* supra. One imposes liability upon the initial receiving bank, while the other absolves it from responsibility, and casts upon the subagency bank all blame for its own negligence, and thereby permits the customer to seek a remedy directly against the subagent for its own negligence or misconduct. Underlying this doctrine is the theory that the depositor for collection appointed the receiving bank his agent to arrange and contract with the subagent for the collection. Thereby a privity arises between the subagent and the principal. Aptly, it is said in *Guelich v. National State Bank,* supra:

"The bank receiving the paper becomes an agent of the depositor, with authority to employ another bank to collect it. The second bank becomes the subagent of the customer of the first, for the reason that the customer authorizes the employment of such an agent to make the collection. The paper remains the property of the customer, and is collected for him; the party employed, with his assent, to make. the collection, must therefore be regarded as his agent. A subagent is accountable ordinarily only to his superior agent, when employed without the assent or direction of the principal. But if he be employed with the express or implied assent of the principal, the superior agent will not be responsible for his acts. There is, in such a case, a privity between the subagent and the principal, who must, therefore, seek a remedy directly against the subagent for his negligence or misconduct."

So, appellee insists that, in the case at bar, he delivered the check in question for collection to the Forest City bank, which thereby became the principal agent. Continuing, appellee says that he authorized the principal agent to select a subagent for the purposes of such collection, and that, armed with this power, the Forest City bank selected appellant as said intermediary. On the other hand, appellant denies the agency, and contends that the check was received for collection and credit. Thus, the only agency existing, appellant urges, was between itself and the Forest City bank, relating to that "collection and credit."

II. Agency and subagency are relationships created by contract. The requirement for such status presupposes an offer and an acceptance thereof, which involves the meeting of minds. Manifestly, appellant never was requested to, and did not, undertake the task of representing appellee in any way. Contrary thereto, appellant accepted the check as the property of the Forest City bank. It was deposited and credited in appellant's institution as such. No notation appeared upon the instrument to suggest that appellee had not parted with his property therein, for the indorsement was in blank. Therefore, whatever the relationship was between appellant and appellee, it was not that of principal and agent, or principal and subagent, under the pleadings and theory of this case.

Although appellee directed the Forest City bank to accomplish the status of principal and subagent, the duty was not performed; for, contrary thereto, the Forest City bank assumed to own the check, and sent it to appellant for collection and credit. Responding to this request of the Forest City bank's, appellant extended the credit. It was accepted by the Forest City bank, and, to the extent thereof, proceeds were withdrawn from appellant's institution.

III. In transactions of this kind, a clear distinction exists between the use of the phrases "collection and credit" and "collection and remittance." *Leach v. Iowa State Sav. Bank*, 202 Iowa 894; *Leach v. Battle Creek Sav. Bank*, 202 Iowa 871. We said in the *Battle Creek Sav. Bank* case, supra:

"With the checks so forwarded was a list of the items on a letter or slip in the usual form used, and reading: 'Enclosed please find for collection and credit items as stated below.' * * * The case is in this respect clearly to be distinguished from

[cases], * * * where items were sent for collection and remittance * * * . The relation of principal and agent never existed with respect to checks drawn on the Battle Creek bank which were forwarded to it by appellee. * * * Such a relation could have been created with respect to the checks on other banks sent by appellee to the Battle Creek bank for collection, but it was not created, and did not exist when the checks were sent for collection and credit.''

Language employed to create the relationship in the case at bar was ''for collection and credit.'' That authorization and the acceptance thereof did not create the relation of principal and subagent between appellee and appellant; but rather, it conferred upon appellant a provisional ownership of the check, so far as the Forest City bank's title therein was concerned. *Leach v. Battle Creek Sav. Bank*, supra. See, also, *Acme H. & M. F. Co. v. Metropolitan Nat. Bank*, 198 Iowa 1337.

IV. Appellant's right to ''charge back the item'' is not controlling if, in fact, the title passed to it. *Acme H. & M. F. Co. v. Metropolitan Nat. Bank*, supra.

V. But appellee argues that appellant in no event could have received title to the check, because at all times ownership remained in him. Foundation for this argument is laid upon the fact that the check was nonnegotiable, because it was not payable to order or bearer. Negotiability requires that it be payable to one or the other. The record reveals that it was payable to appellee, and the words ''order'' or ''bearer'' do not appear. Whether or not it was payable to bearer because of the blank indorsement, is not determined, but see *Warren v. Scott*, 32 Iowa 22; and *Wettlaufer v. Baxter*, 137 Ky. 362 (125 S. W. 741); *Johnson v. Lassiter*, 155 N. C. 47 (71 S. E. 23). We assume, without deciding, that the check was not negotiable. Nevertheless, appellee is not assisted at this juncture.

Were the question involved one relating to appellee's control or ownership of the check or its proceeds in appellant's hands at the time, a different situation would then arise. Likewise, a different issue would appear, had the suit been brought for conversion; for, if the check is not negotiable, appellant can obtain no greater rights therein than those possessed by the Forest City bank. To put the thought in another way, a nonnegotiable instrument, when transferred, is subject to prior

equities. However that may be, nonnegotiability will not make appellant the appellee's subagent, under the facts and circumstances here presented. Appellant did not so contract, and the subagency, if any there is, must arise therefrom in this instance. Ratification, conversion, or estoppel is not relied upon or proven. (We do not here hold or suggest that such remedy is available.) Solely in his petition, as in the argument, appellee predicates his right to recover upon the one ground of subagency. It is possible that appellant obtained no title to the check or its proceeds, because the same, under the nonnegotiable instrument, belonged to appellee. Yet, lack of ownership in the check and the proceeds did not transform appellant into an express or implied contractor for something it never agreed to be. Legal relationships naturally would arise from such lack of ownership in the premises, but the subagency here contended for is not one of them, within the pleadings and theory upon which the case was tried.

VI. Reference is made by appellee to appellant's answer, where it is claimed an admission is made that an agency existed  for collection purposes. Undoubtedly, appellee means defendant's Exhibit 1, which was a daily transcript used by appellant. This is known in the record as appellant's receipt. Material portions thereof are as follows:

"In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. * * * This bank or its correspondents may send items, directly or indirectly, to any bank including the payer, and accept its draft or credit as conditional payment in lieu of cash."

Said transcript was sent by appellant to the Forest City bank, at the time appellee's check was received in Cedar Rapids. Reliance is made upon this transcript by appellant for a defense, but appellee objected to its introduction into the evidence. Many reasons are asserted for its inadmissibility. Among them are:

"(a). Because there is no sufficient or competent evidence in the record to prove or vary the terms of the contract between the two banks, and (b), it is in no event binding upon the plaintiff [appellee]."

The objection was sustained. Furthermore, appellee argues that the contract between the Forest City bank and appellant was complete when the check was received, with the letter stating that it was sent for "collection and credit." Hence, appellee maintains that the transcript or receipt aforesaid amounted to no more than a counter offer, and that appellant acted entirely under the letter of transmission, to the effect that the check was for deposit and credit. Resultantly, the part of the defendant's answer—to wit, the receipt or transcript above mentioned—was not sustained in the proof. When that proposition was removed by the court, necessarily there went with it the entire document, which included appellant's reference to the agency for collection purposes, as shown by the quotation previously made. With that part of the record omitted, it cannot reasonably be said that appellant has pleaded that it was an agent, except such as might be implied from the letter which accompanied the check, to the effect that the delivery was made for "collection and credit."

On the other hand, if that portion of appellant's case remains in the record relating to the agency for collection purposes, there must also accompany it the balance of the receipt or transcript, including the following sentence:

"This bank, or its correspondents, may send items directly or indirectly to any bank, including the payer, and accept its draft or credit as conditional payment in lieu of cash."

Then if that sentence remains in, there was negligence in no event, because such provision was carried out to the letter.

Wherefore, the judgment and decree of the district court should be, and hereby is, reversed.—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.