**Errol GARREN and Nancy Garren,
Individuals, Appellants,**

v.

**FIRST REALTY, LTD., Appellee.**

No. 89–1738.

Supreme Court of Iowa.

Feb. 19, 1992.

John R. Hearn, Des Moines, for appellants.

William B. Serangeli and Michael E. Marshall of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN and SNELL, JJ.

SCHULTZ, Justice.

In this appeal, plaintiffs, Errol and Nancy Garren, are dissatisfied with the judgment they obtained against a real estate broker. Plaintiffs purchased a home in 1985. Defendant First Realty, Ltd., acted as broker in the transaction. Plaintiffs were not told that the purchased property was in a flood fringe zone. In 1986, a flood damaged plaintiffs' home and their personal property and they sought reimbursement for their losses. Plaintiffs secured settlements for their flood damage from the appraiser, the mortgage lender, and the sellers. They were unable to settle with defendant and brought this action. They

recovered from defendant; however, their loss was reduced by the apportionment of fault among the other released parties. On appeal, plaintiffs challenge the apportionment of fault. Our court of appeals reversed and remanded. We disagree and affirm the district court's judgment.

The sellers contacted Mrs. Babcock, one of defendant's sales agents, and selected defendant as their real estate broker. After seeing defendant's for sale sign while driving by the house, plaintiffs contacted another sales agent of defendant, Ms. Daniels, and requested information about the house which was for sale. Daniels showed plaintiffs the house and plaintiffs then purchased the property.

Although the sellers knew that the property was in a flood fringe zone, they did not reveal this information to either plaintiffs or defendant. Plaintiffs' mortgage lender required an appraisal of the property. In completing the appraisal form, the appraiser indicated that the property was not included in a flood plain. The title examination also did not reveal this information.

Plaintiffs alleged several theories of recovery, including negligence, breach of fiduciary duty, fraud, and breach of implied contract. At the conclusion of the evidence, the trial court submitted the negligence theory to the jury and directed a verdict against plaintiffs on all other theories. The jury was allowed to compare the fault of the sellers, lender, appraiser, and plaintiffs. The jury determined plaintiffs' damages and apportioned fault as follows: fifty percent to the sellers; thirty-four percent to the lender and appraiser; fifteen percent to the defendant First Realty; and one percent to plaintiffs. The trial court entered judgment for plaintiffs against defendant based on the jury's apportionment of fault.

On appeal, plaintiffs maintain that the trial court erred in (1) dismissing their breach of contract and fraud claims; (2) giving a jury instruction which allowed the jury to consider and compare the sellers' fault in apportioning fault among the parties; (3) evidentiary rulings; and (4) giving

and failing to give certain jury instructions. We address these matters in turn.

■ I. *Breach of contract.* Plaintiffs claim that the district court erred by failing to submit a theory of recovery based on express and implied contract to the jury. They argue that a contract theory of recovery would avoid apportionment of fault and the resultant reduction in the verdict for the percentage degree of fault of other parties.

In their pleadings, plaintiffs alleged that an express or implied contract had been created with defendant; therefore, defendant was contractually obligated to act as plaintiffs' real estate agent. Plaintiffs testified that Daniels verbally agreed to act as their agent and protect their best interests. They urge that this verbal agreement is substantial evidence that a contract was formed with Daniels for which the defendant, as her employer, is responsible. We disagree.

■ We first examine the principles of an agency relationship. An agency relationship is created by contract. *Thompson v. Cedar Rapids Nat'l Bank,* 207 Iowa 786, 790, 223 N.W. 517, 518 (1929). Real estate brokers assume a fiduciary relationship with their principals which creates a duty of fidelity and good faith. *Menzel v. Morse,* 362 N.W.2d 465, 474 (Iowa 1985). In addition, brokers are agents of the party who first employs them. *Id.* at 475. Generally, brokers "cannot act for both [buyers and sellers] in the transaction without the knowledge of both." *Menzel,* 362 N.W.2d at 475 (quoting Restatement (Second) of Agency § 391 (1958)); *see also Murphy v. Brown,* 252 Iowa 764, 770, 108 N.W.2d 353, 356 (1961).

■ As a general rule, a transaction in which a broker represents another party is contrary to public policy and unenforceable without the principal party's knowledge or consent. *Hughes v. Miracle Ford, Inc.,* 676 S.W.2d 642, 645 (Tex.Ct.App.1984); *see also Barbat v. M.E. Arden Co.,* 74 Mich. App. 540, 543, 254 N.W.2d 779, 781 (1977). A bargain with any person in a fiduciary relationship with another, the purpose and

terms of which are likely to cause a breach of the fiduciary's duty to that other party, is illegal and unenforceable. 6A Arthur L. Corbin, *Corbin on Contracts* § 1456 (1962). Thus, if a buyer knows the seller has hired a broker and the seller did not consent to that broker representing the buyer, then the buyer cannot enforce a claim against the broker for breach of duty as an agent. *Warren v. Mangels Realty*, 23 Ariz.App. 318, 321, 533 P.2d 78, 81 (1975).

In this case, it is undisputed that defendant was first employed as an agent for the sellers and that plaintiffs were aware of this employment relationship. Plaintiffs also knew that Daniels was employed by defendant. There is no evidence in the record that the sellers had consented to defendant acting in a dual agency relationship. Therefore, plaintiffs cannot enforce a claim against the broker for breach of duty as their agent. *Id.* Consequently, we hold that the alleged contract between plaintiffs and the broker is unenforceable. Thus, we reject plaintiffs' claim that the trial court should have instructed the jury on defendant's duties regarding the realtor-client relationship and defendant's fiduciary relationship with plaintiffs. Under this holding, we need not determine whether the wrongful acts under this alleged contract are subject to the comparative fault provisions in Iowa Code chapter 668 (1989).

II. *Fraud.* The basis for plaintiffs' fraud claim was defendant's failure to discover and disclose that the property was in a flood fringe zone. Defendant maintains that it made no false representations with intent to deceive. The court of appeals concluded that defendant possessed superior knowledge and had a duty to disclose facts which would be unfavorable to plaintiffs. It further concluded that the requirements of scienter and intent to deceive were met by defendant's failure to disclose the flood zone information.

The elements for a cause of action based on fraud consist of (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damage. *Hagarty*

*v. Dysart–Geneseo Community School Dist.*, 282 N.W.2d 92, 95 (Iowa 1979). Scienter and intent to deceive may be shown when the speaker has actual knowledge of the falsity of his representations or speaks in reckless disregard of whether those representations are true or false. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984). In this case, there is no showing that defendant's agent had actual knowledge of the flood fringe zone or that she made any representations concerning the zoning of the property. Thus, the question becomes whether defendant's conduct was sufficiently reckless to permit implication of the elements of scienter and intent.

In this case, we must determine whether there is any evidence of recklessness on the part of defendant's agent. Since there is no proof that defendant's agent knew of the zoning or made any representations regarding the zoning, plaintiffs can only claim that defendant's agent should have made zoning inquiries. The fact that defendant's agent could have been more careful by making further inquiry is insufficient to prove that she acted in reckless disregard of the truth. *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976). Thus, we conclude that the trial court was correct in directing a verdict in defendant's favor on plaintiffs' fraud claim.

III. *Evidentiary rulings.* We address in turn the three issues plaintiffs raise concerning the trial court's ruling on objections to offered evidence.

A. *Claims and releases.* Over plaintiffs' objections, defendant introduced evidence that plaintiffs made claims against other parties and then released those claims. Plaintiffs urge that this evidence violates Iowa Rule of Evidence 408 which prohibits the admission of evidence of compromise of a disputed claim to prove liability. Defendant counters that it presented no evidence of settlement or compromise and limited its proof to the initiation of plaintiffs' claims and releases of certain parties.

Rule 408 addresses the admissibility of compromise of a claim rather than the making of claims or release of parties. Rule 408 provides that "[t]his rule does not require the exclusion of any evidence ... when the evidence is offered for another purpose...." In this case, the court was required to instruct the jury to determine allocation of fault for the parties who had been released from liability. Iowa Code § 668.3(2)(b) (1989). Without the admission of proof of the released parties, the trial court could not have instructed the jury and the jury could not have determined the allocation of fault of the released parties. We hold that the evidence was admissible to identify the parties released.

■ B. *Sales of other homes.* During cross-examination of one of the plaintiffs, defendant was allowed to present evidence concerning the post-flood sales of other homes in the vicinity. Plaintiffs objected to the relevancy of other sales on the basis that there was no foundation to show that the properties sold were comparable. They urge that there was no showing that the buyers knew of the flood zoning at the time of their respective purchases.

■ Evidence is relevant if it renders existence of fact more probable or less probable than without it. *Carter v. Mac-Millan Oil Co., Inc.,* 355 N.W.2d 52, 55 (Iowa 1984) (citations omitted). Ordinarily, relevancy is a matter of the trial court's discretion. *Id.* Consequently, on appeal the issue is whether the trial court abused that discretion.

Plaintiffs had presented testimony regarding the diminution of the property's value because of its unmarketability. We believe the evidence in question was relevant to show marketability of the property. Thus, we conclude that the court did not abuse its discretion in admitting the evidence.

■ C. *Hearsay.* After admission of evidence on the sale of nearby homes, plaintiffs offered evidence that one of the plaintiffs and their expert witness conversed with buyers of nearby homes. These witnesses were allowed to testify that they talked with other buyers and concluded that the buyers were not informed of the flood zone. However, the trial court sustained hearsay objections to more detailed testimony concerning the content of these conversations.

On appeal, plaintiffs first rely on Iowa Rule of Evidence 703 which allows an expert to give an opinion based upon facts or data not admissible in evidence. Specifically, they contend that the content of the conversations with nearby home buyers is admissible because it forms the underlying data and facts of the expert opinion testimony plaintiffs offered.

The admissibility of expert testimony rests largely on the trial court's discretion and we will reverse such a ruling only on a clear showing of abuse of discretion. *State v. Vincik,* 398 N.W.2d 788, 795 (Iowa 1987). In *Vincik,* we held that the trial court did not abuse its discretion by excluding evidence of a psychologist-expert's conversation with others. *Id.* Recently, we discussed at length the admissibility of an expert's recitation of out-of-court statements that were utilized in arriving at the expert's opinion. *Brunner v. Brown,* 480 N.W.2d 33, 34–37 (Iowa 1992). We held that there was no abuse of discretion by the trial court in refusing to admit the underlying hearsay. *Brunner,* 480 N.W.2d at 37. Likewise, we hold that the trial court did not abuse its discretion in disallowing testimony on conversations with buyers of nearby homes.

IV. *Seller, lender, and appraiser.* The trial court submitted jury instructions allowing the jury to compare the fault of the sellers, the lender, and the appraiser. Plaintiffs urge that this was error.

■ Regarding the sellers, plaintiffs urge that substantial evidence was not presented to show the sellers' knowledge of the flood zoning or their failure to disclose this fact. We disagree. Both plaintiffs testified that the city mailed a notice of the flood zoning to the sellers. We can infer that they received the notice and read it. There was evidence that the sellers did not inform plaintiffs, the listing agent, or the selling agent of the zoning. We con-

clude that the trial court properly submitted the negligence of the sellers to the jury for purposes of determining their percentage of fault as a released party.

■ Regarding the lender and the appraiser, plaintiffs maintain there was no evidence that they relied upon them to disclose flood zoning. The existence of a duty is a prerequisite to establishing a claim of negligence. *Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.2d 281, 285 (Iowa 1981). In *Larsen,* we held that the lender could be liable to the seller for its negligent performance of an appraisal if the seller relied on the accuracy of the appraisal. *Id.* at 287. Thus, in this case, we must determine whether plaintiffs relied on the lender and appraiser for an accurate valuation of the property.

Although there is no evidence that plaintiffs spoke with the appraiser or saw the appraisal at the time they closed the transaction, we believe there is sufficient evidence of reliance. Plaintiffs offered to purchase a home for $66,000 on the condition that they obtain a FHA fixed-rate mortgage for $65,600. The amount of the loan was close to the sale price. Plaintiffs paid the lender a fee to have the property appraised. The appraiser was required to determine whether the property was in a flood zone. Plaintiffs' evidence that the flood zoning decreased the value of the property infers that if the appraiser had discovered the flood zoning, then the loan would not have gone through and the sale would not have been made. Thus, we believe that it can be properly inferred that plaintiffs relied on the lender and appraiser to accurately appraise the property. Additionally, in their loan application, plaintiffs certified their awareness that the property had been appraised by HUD/FHA for $60,-000.

V. *Summary.* We conclude that the trial court did not err in any of the issues submitted on appeal. Although we have not addressed every contention made, we have examined all issues and find no error.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.