33 F.3d 23
 Prod.Liab.Rep. (CCH) P 13,992
ETHYL CORPORATION; Travelers Insurance Company; Ludgate
Insurance Company, Ltd.; Compagnie Europeene d'Assurances
Industrielles S.A.; Assicuriazioni Generali S.P.A.; Utica
Mutual Insurance Company, Appellants,
v.
BP PERFORMANCE POLYMERS, INC., Appellee.
 No. 93-3124.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1994.
Decided Aug. 22, 1994.
 
 Scott W. Johnson, Minneapolis, MN, argued (Linda S. Svitak, Richard J. Geddes, Robert W. Murnane and Richard Zito, on the brief), for appellants.
 Robert J. Tansey, Jr., Minneapolis, MN, argued (Kathleen A. Marron, Howard R. Orenstein and Mark L. Zaiger, on the brief), for appellee.
 Before McMILLIAN, Circuit Judge, OAKES,* Senior Circuit Judge, and FAGG, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 The question before us in this diversity case is whether the Iowa Comparative Fault Act (the Iowa Act), Iowa Code Secs. 668.1-.15 (1993), applies to Ethyl Corporation's breach of warranty claim seeking recovery of entirely economic losses against BP Performance Polymers, Inc. (BP). Because the Iowa Supreme Court has not decided whether the Iowa Act applies to this type of claim, see Garren v. First Realty, Ltd., 481 N.W.2d 335, 338 (Iowa 1992), we must predict how that court would decide the question. Brandenburg v. Allstate Ins. Co., 23 F.3d 1438, 1440 (8th Cir.1994). Reviewing the question of state law de novo, see Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we predict the Iowa Supreme Court would not apply the Iowa Act to Ethyl's claim. We thus reverse the district court's contrary decision and remand.
 
 
 2
 From 1985 through 1987, Ethyl purchased chemical compounds from BP for use in making plastic film wrap. Ethyl in turn sold the wrap to General Mills for use in packaging General Mills's Fruit Roll-ups, a food product. In April 1987, General Mills notified Ethyl it had received complaints that some of its Fruit Roll-ups had a strange taste. Both General Mills and Ethyl investigated the complaints and eventually, in 1989, they determined BP had shipped some contaminated chemical compound to Ethyl and Ethyl had used the contaminated compound in the Fruit Roll-up packaging. After General Mills initiated a nationwide recall of its Fruit Roll-ups, General Mills sued Ethyl for Ethyl's failure to provide a food-safe plastic wrap. The two parties settled the claim, and Ethyl paid $8,960,000 to General Mills under the settlement agreement.
 
 
 3
 Ethyl then filed this lawsuit against BP, seeking reimbursement from BP for the full amount it paid to General Mills plus damages for loss of revenue, loss of business advantage, costs, and attorney's fees. Initially, Ethyl alleged claims against BP for breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, and strict liability. In response to a summary judgment motion by BP, the district court dismissed Ethyl's negligence and strict liability claims, concluding Ethyl's claims "sound[ed] in economic loss" and thus should be resolved under contract law rather than tort law. The district court also noted Ethyl's contract and express warranty claims were virtually identical. Ethyl proceeded to trial on only express and implied warranty theories. Before trial, the district court decided the Iowa Act applied to Ethyl's breach of warranty claims.
 
 
 4
 At trial, there was no dispute that BP caused the compound contamination. The parties did dispute whether BP knew the compound would ultimately be used with food products, whether Ethyl should have obtained a guarantee from BP of the chemical ingredients used in the compound, and whether Ethyl should have obtained Food and Drug Administration certification of the chemical compound. After trial, a jury found BP made an express warranty to provide Ethyl with uncontaminated chemical compounds. The jury also found BP materially breached the express warranty and proximately caused Ethyl to incur $9,367,000 in damages. Because the jury found Ethyl 70% at fault, however, the district court awarded no damages to Ethyl. See Iowa Code Sec. 668.3(1) (barring recovery by claimant who bears greater percentage of fault than defendants). Ethyl appeals, arguing the district court should have awarded $9,367,000 in damages because the Iowa Act does not apply to Ethyl's breach of warranty claim.
 
 
 5
 The district court applied the Iowa Act to Ethyl's breach of warranty claim because the plain language of the Iowa Act's fault definition includes the term "breach of warranty." The Iowa Act defines "fault" as
 
 
 6
 [O]ne or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.
 
 
 7
 Iowa Code Sec. 668.1(1). Unlike the district court, we do not believe the Iowa Act applies to all breach of warranty claims, regardless of their nature. Viewing the fault definition in context of the Iowa Act's purpose, Iowa case law, and official comments, we believe the Iowa Act applies only when the breach results in personal injury or property damage.
 
 
 8
 The Iowa Act "relat[es] to liability in tort by establishing comparative fault as the basis for liability in relation to claims for damages arising from injury to or death of a person or harm to property." 1984 Iowa Acts 524; see Waterloo Sav. Bank v. Austin ex rel. Austin, 494 N.W.2d 715, 717 (Iowa 1993). Consistent with the Iowa Act's application in the tort context, the Iowa Supreme Court has held the Iowa Act does not apply when the claim for relief is "contractual in nature." Austin, 494 N.W.2d at 717; Vasquez v. LeMars Mut. Ins. Co., 477 N.W.2d 404, 409 (Iowa 1991). As the district court recognized in ruling on BP's summary judgment motion, Ethyl's breach of warranty claim is a contractual one. Under Iowa law, a claim for purely economic loss is recoverable only in contract and not in tort law. Nelson v. Todd's Ltd., 426 N.W.2d 120, 123-25 (Iowa 1988) (entirely economic injuries without accompanying physical injury to person or property are not recoverable under strict liability or negligence).
 
 
 9
 In addition to this guidance found in Iowa law, the Uniform Comparative Fault Act's official comments state the Uniform Act does not cover contract claims seeking entirely economic recovery. The Iowa Act is patterned after the Uniform Comparative Fault Act and the Uniform Act's official comments are persuasive in interpreting the Iowa Act. Coker v. Abell-Howe Co., 491 N.W.2d 143, 148 (Iowa 1992). Indeed, the Iowa Act's definition of fault is taken directly from the Uniform Act. Id. The Uniform Act's official comments state the Uniform Act only covers physical harm to persons or property and consequential damages deriving from physical harm. Uniform Comparative Fault Act Sec. 1 comment, 12 U.L.A. 44 (Supp.1994). With regard to breach of warranty claims, the comments specifically state:
 
 
 10
 An action for breach of warranty is held to sound sometimes in tort and sometimes in contract. There is no intent to include in the coverage of the Act actions that are fully contractual in their gravamen and in which the plaintiff is suing solely because [the plaintiff] did not recover what [the plaintiff] contracted to receive. The restriction of coverage to physical harms to person or property excludes these claims.
 
 
 11
 Id. at 45. We conclude the Iowa Supreme Court would not apply the Iowa Act to Ethyl's claim because it involves no physical harm to persons or property.
 
 
 12
 BP argues Renze Hybrids, Inc. v. Shell Oil Co., 418 N.W.2d 634 (Iowa 1988), supports the district court's application of the Iowa Act in this case. We disagree. Although the trial court had applied the Iowa Act to Renze's breach of implied warranty claim, the breach caused damage to Renze's property and Renze did not challenge the Iowa Act's application on appeal. Id. at 637, 639; see Manning v. International Harvester Co., 381 N.W.2d 376, 378-79 (Iowa Ct.App.1985) (when defective planting machine caused corn grower's crop to be smaller than it should have been, harm to grower's crop was physical property damage, not economic loss, and thus grower could recover in tort). Ethyl suffered entirely economic loss, thus, Renze does not apply here.
 
 
 13
 Because the district court committed error in applying the Iowa Act to Ethyl's claim, we need not reach Ethyl's remaining arguments. We reverse the district court's judgment, and we remand this case to the district court with directions to enter judgment of $9,367,000 in Ethyl's favor.
 
 
 
 *
 The HONORABLE JAMES L. OAKES, United States Senior Circuit Judge for the Court of Appeals for the Second Circuit, sitting by designation