TCBY SYSTEMS, INC., an Arkansas
Corporation, Appellant,

v.

RSP COMPANY, INC.; Clarence
Paulson; Randy Paulson,
Appellees. (Two Cases)

TCBY SYSTEMS, INC., an Arkansas
Corporation, Appellee,

v.

RSP COMPANY, INC.; Clarence
Paulson; Randy Paulson,
Appellants. (Two Cases)

Nos. 93–2683, 93–2788, 93–3026, 93–3028.

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1994.

Decided Aug. 26, 1994.

Kevin A. Crass, Little Rock, AR, argued (William H. Sutton and R. Christopher Lawson, on the brief), for appellant.

J. Michael Dady, Minneapolis, MN, argued (Joseph A. Thompson and Ann K. Grossman, appeared on brief), for appellee.

Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FAGG, Circuit Judge.

This diversity case is about a failed frozen yogurt store and the meltdown of the franchise relationship between the franchisor, TCBY Systems, Inc., and the franchisee, RSP Company, Inc. After RSP prematurely terminated the franchise agreement, TCBY sued RSP, RSP's investor and sole shareholder Clarence Paulson, and his son and store operator Randy Paulson. RSP and the Paulsons counterclaimed asserting, among other things, that TCBY breached the franchise agreement by failing to provide reasonable assistance in selecting and evaluating a location for their store as the agreement provided. Following a trial, a jury found TCBY breached the franchise agreement. TCBY appeals the district court's denial of its motion for judgment as a matter of law (JAML) or alternatively a new trial, evidentiary rulings, and the award of attorneys' fees and costs to RSP and the Paulsons. RSP and the Paulsons cross-appeal the dismissal of their Minnesota Franchise Act claims, dismissal of their motion for additur or a new trial on damages, and the amount of attorneys' fees and costs awarded. We re-

verse and remand for reconsideration of the cost award, but affirm on all other issues.

In December 1988, Clarence Paulson contacted TCBY about owning and operating a TCBY franchise. Paulson spoke with TCBY's director of franchise administration, Kim Hinton, who sent Paulson a brochure about TCBY franchises. The brochure stated:

> Our organization is fully versed in the real estate aspects with respect to the opening of a "TCBY" yogurt store.... [O]ne of TCBY's real estate directors will schedule a site trip to your particular area to discuss the various options open to you and to approve the optimal location.... [We have] proven experience in knowing what kind of location can provide you the best opportunity for continued success.

TCBY representatives told the Paulsons they could expect gross sales in the range of $200,000 to $240,000 in a Minnesota store. The Paulsons were initially interested in locating a store in Crystal, a Minneapolis suburb, but TCBY refused to approve the Crystal site. In discussing the Crystal site's rejection with Clarence Paulson, Hinton suggested that the Paulsons look for potential sites outside the Twin Cities, even though the only Minnesota TCBY store outside the Twin Cities was faltering. When Clarence Paulson expressed uncertainty about recognizing a viable location, Hinton told Paulson that TCBY had experts who would tell him whether a location was appropriate. The Paulsons eventually found a new strip mall in Alexandria, a small town in central Minnesota, and wrote to TCBY about the site. TCBY approved the Paulsons' request for a franchise in Alexandria and scheduled a site approval visit by its division manager. On RSP's behalf, Randy Paulson signed a franchise agreement, which stated TCBY would provide reasonable assistance in selecting and evaluating proposed store locations, but TCBY's selection or approval of a proposed location was not a warranty or representation of the location's suitability.

TCBY division manager Randy Ball met the Paulsons in Alexandria and spent about four hours there. Ball looked at the proposed site, drove around Alexandria, and spoke with the mall developer. Ball did not obtain a demographic report as outlined by TCBY's internal site selection guidelines provided to division managers. According to Ball, he was able to gather the demographic information by his "sight observation of the community." Contrary to the erroneous information Ball gathered from his sight observation, the Alexandria site did not satisfy the minimum standards listed in TCBY's guidelines. These guidelines stated a TCBY store needed a minimum population base of 7500 people within a one-mile radius of the store, estimated median household income of at least $25,000, median age in the high 20s or low 30s, and a focused rather than scattered market. In contrast, the population within one mile of the proposed Alexandria site was 3756, the median household income was about $18,000, and the market was scattered. In addition, the site was in a new mall, which the guidelines stated should be avoided because of a new mall's uncertain prosperity. Based on Ball's visit to Alexandria and a site evaluation report he completed later, TCBY approved the site. The site evaluation report estimated the first year's gross sales at $250,000.

In May 1989, the Paulsons opened a TCBY store in Alexandria. Despite excellent store assessments by TCBY, the store's gross sales during the first year were less than half of TCBY's estimate. After TCBY refused RSP's request to add "cold weather" items to the store's menu, RSP terminated the franchise agreement in December 1990. The store never met the break even point.

TCBY sued RSP and the Paulsons in Arkansas seeking to recover the value of royalties and advertising funds it would have received over the remaining term of the original franchise agreement and renewal period. RSP and the Paulsons counterclaimed alleging breach of contract, fraud, and violations of the Minnesota Franchise Act (MFA), Minn.Stat.Ann. §§ 80C.01–.30 (West 1986 & Supp.1994). The district court dismissed the MFA claims and submitted the contract and fraud claims to the jury. The district court submitted the breach of contract claim on two theories. The court instructed the jury it could find TCBY breached the agreement

if the jury found that TCBY failed to provide reasonable assistance and expertise in selecting a viable location for a TCBY store or that TCBY breached its obligation of good faith and fair dealing in its performance of the agreement.

After a five-day trial, the jury found TCBY had breached the franchise agreement, but found in TCBY's favor on the fraud claim. The jury awarded $70,000 in damages. TCBY moved for JAML or alternatively for a new trial on the contract claim, asserting the evidence was insufficient to support the verdict. The district court denied TCBY's motion and later awarded RSP and the Paulsons $95,363 in attorneys' fees and $3990.99 in costs. RSP and the Paulsons moved for additur or a new trial on damages. The district court denied the motion.

TCBY first asserts the district court should have granted its motion for JAML on the breach of contract claim. In reviewing the district court's denial of JAML, we apply the same standard as the district court. We consider the evidence in the light most favorable to RSP and the Paulsons, and give them the benefit of all reasonable inferences from the proven facts. *TEC Floor Corp. v. Wal-Mart Stores, Inc.,* 4 F.3d 599, 601 (8th Cir. 1993). JAML was properly denied unless all the evidence pointed one way and was susceptible of no reasonable inferences sustaining RSP and the Paulsons' position. *Pate v. National Fund Raising Consultants, Inc.,* 20 F.3d 341, 343 (8th Cir.1994).

■ We agree with the district court that sufficient evidence supports a jury finding that TCBY breached the contract by failing to provide reasonable assistance in site selection. *See Brennan v. Carvel Corp.,* 929 F.2d 801, 809–10 (1st Cir.1991). We also agree with the district court that sufficient evidence supports a jury finding that TCBY breached the contract by breaching an obligation of good faith and fair dealing. Evidence supporting both findings includes the testimony of the Paulsons and Randy Ball. TCBY sent Ball, who had no earlier experience in evaluating sites for TCBY franchises, to evaluate the Alexandria site. Ball did not follow TCBY's own guidelines for site evaluation and selection. Rather than obtaining a de-mographic report, he just "eyeballed" the community. After the initial approval, TCBY issued its final approval of the Alexandria location even though it had obtained a demographic report showing Alexandria fell woefully short of TCBY's minimum guidelines. This supports a finding that TCBY was not honest in fact and acted with a bad motive. *See Richard Short Oil Co. v. Texaco, Inc.,* 799 F.2d 415, 422 (8th Cir.1986). Because the evidence sufficiently supported the breach of contract verdict on both theories, the district court properly denied TCBY's motion for JAML.

■ In a related argument, TCBY contends the district court erroneously instructed the jury that the franchise agreement imposed a duty of good faith and fair dealing in its performance. According to TCBY, the parties did not have this duty under Arkansas law. TCBY cites no authority disavowing the duty, however, and our research does not reveal any Arkansas cases that decide the issue. Thus, we must review the question of state law de novo and predict whether the Arkansas Supreme Court would find the franchise agreement contains an implied covenant of good faith and fair dealing. *Ethyl Corp. v. BP Performance Polymers, Inc.,* 33 F.3d 23, 24 (8th Cir.1994).

In deciding there is an implied covenant of good faith and fair dealing in every contract, the district court relied on the common law and the Arkansas Commercial Code. Another federal district judge in Arkansas shares the view that contracting parties have a general obligation of good faith, and that breach of this obligation is a breach of contract. *See Ripplemeyer v. National Grape Coop. Ass'n,* 807 F.Supp. 1439, 1451 (W.D.Ark.1992) (citing Ark.Code Ann. § 4–1–203 (Michie 1987); Restatement (Second) of Contracts § 205 (1981)). In a case controlled by Arkansas law, we have presumed the existence of a covenant of good faith and fair dealing in a marketing agreement between Texaco and a distributor of its petroleum products. *Richard Short Oil Co.,* 799 F.2d at 421–22. In addition, the Arkansas Supreme Court has recognized a duty of good faith and fair dealing in all employment contracts, *Smith v.*

*American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683, 684 (1991), and in an oil and gas lease, *Arkansas La. Gas Co. v. Evans*, 232 Ark. 495, 338 S.W.2d 666, 669 (1960). Given these precedents, we predict the Arkansas Supreme Court would imply a covenant of good faith and fair dealing in the franchise agreement, and thus, the district court properly instructed the jury.

■ TCBY also asserts the district court should have granted its motion for a new trial. We review the district court's denial of a new trial motion for abuse of discretion. *TEC Floor Corp.*, 4 F.3d at 602. In denying TCBY's motion, the district court found no evidentiary rulings were prejudicial enough to produce a different result. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir. 1990). The court also found the jury's verdict was not against the great weight, clear weight, or overwhelming weight of the evidence. *See White v. Pence*, 961 F.2d 776, 780–82 (8th Cir.1992). We agree, and thus conclude the district court did not abuse its discretion in denying TCBY's new trial motion.

■ TCBY next asserts the district court committed error in allowing parol evidence to modify the franchise agreement. Specifically, TCBY contends RSP established additional obligations through the admission of promotional material distributed before the agreement was signed and verbal representations offered for the purpose of site selection assistance. Generally, under Arkansas law, the parol evidence rule requires exclusion of evidence that adds to or varies an unambiguous written contract. *Union Nat'l Bank v. Federal Nat'l Mortgage Ass'n*, 860 F.2d 847, 855–56 (8th Cir.1988). The district court found the term "reasonable assistance" was ambiguous. We agree. Also, the challenged evidence did not add to or vary the franchise agreement. Instead, the evidence helped explain what the parties meant by the term "reasonable assistance." We thus conclude the district court properly admitted the promotional material and verbal representations.

■ TCBY also asserts the district committed error in permitting the franchise expert to testify about the adequacy of TCBY's site review and evaluation process. We review the district court's admission of expert testimony for abuse of discretion. *Gilliam v. Roche Biomedical Labs., Inc.*, 989 F.2d 278, 279 (8th Cir.1993). Under Federal Rule of Evidence 702, an expert opinion is admissible if the expert's specialized knowledge will help the jury understand the evidence or decide a fact in issue. Under Rule 704(a), an expert may give an opinion on an ultimate issue for the jury.

Here, RSP asked the franchise expert to give an opinion "to a reasonable degree of certainty [about] whether the process that TCBY followed in approving a TCBY store for the Paulsons in Alexandria, Minnesota, met the minimum custom and practice observed by franchisors in the fast food franchise industry." The expert responded, "I have a professional opinion that it was not adequate." Like the district court, we believe the expert's testimony helped the jury understand what is reasonable in the franchise industry. Thus, the district court did not abuse its discretion in admitting the expert opinion. Further, TCBY has failed to show the expert opinion's admission affected TCBY's substantial rights because the testimony of the Paulsons and Randy Ball supports the verdict.

■ TCBY next asserts the district court erroneously allowed the jury to commingle RSP's corporate damages and Clarence Paulson's individual damages by giving the jury an interrogatory that asked whether the jury found TCBY breached a contract with "RSP or Clarence Paulson." Because Clarence Paulson was not a party to the franchise agreement, TCBY asserts Clarence Paulson cannot recover damages for breach of contract.

The district court concluded Clarence Paulson was entitled to recover his initial capital investment of $70,000 because the loss was an individual injury. We disagree with this conclusion, but reject TCBY's assertion that the jury commingled damages. Although the damages expert phrased his testimony in terms of Clarence Paulson's lost investment in RSP, this was merely an alternative way of characterizing the losses that

the corporation sustained as a result of TCBY's breach of the franchise agreement. The jury could not have commingled corporate and individual damages because there was no evidence about damages arising from separate and distinct injuries to Clarence Paulson. *See Taha v. Engstrand,* 987 F.2d 505, 507 (8th Cir.1993); *Brandon v. Brandon Const. Co.,* 300 Ark. 44, 776 S.W.2d 349, 352–54 (1989). From the context of the trial, the jury understood Clarence Paulson was RSP's sole shareholder and would be the person made whole if the corporation recovered its losses. *See Taha,* 987 F.2d at 507. Further, despite references to Clarence Paulson, the breach of contract instruction required the jury to find that TCBY breached a contract between RSP and TCBY and that RSP suffered damages as a result of the breach. We conclude any error in the interrogatory was harmless.

■ Finally, TCBY asserts the district court committed error in awarding RSP and the Paulsons their attorneys' fees and costs. TCBY contends RSP and the Paulsons are not entitled to attorneys' fees because. in their counterclaim they based their request for fees on the MFA claims, which the district court dismissed before trial. After the jury verdict, RSP and the Paulsons sought fees based on section 17(e) of the franchise agreement, public policy, and Ark.Code Ann. § 16–22–308 (Michie 1994), which provides for discretionary attorney fee awards to prevailing parties in breach of contract actions. We conclude the district court did not abuse its discretion in awarding RSP and the Paulsons their attorneys' fees under Ark.Code Ann. § 16–22–308. *See First Nat'l Bank v. Griffin,* 310 Ark. 164, 832 S.W.2d 816, 821 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1280, 122 L.Ed.2d 673 (1993); *Crain Indus., Inc. v. Cass,* 305 Ark. 566, 810 S.W.2d 910, 916 (1991); *Logue v. Seven–Hot Springs Corp.,* 926 F.2d 722, 725 (8th . Cir.1991). TCBY also complains the fee award is excessive given RSP and the Paulsons' limited success. Under Arkansas law, however, RSP and the Paulsons were prevailing parties entitled to attorneys' fees. *See ERC Mortgage Group, Inc. v. Luper,* 32 Ark.App. 19, 795 S.W.2d 362, 364–65 (1990). The dis-

trict court did not abuse its discretion in setting the award's amount.

■ Having rejected TCBY's contentions, we now turn to the issues raised in the cross-appeal. RSP and the Paulsons first contend the district court erroneously dismissed the MFA claims. RSP and the Paulsons concede that Arkansas choice-of-law rules apply, but challenge the district court's holding that the franchise agreement's choice-of-law clause defeats application of the MFA. The franchise agreement's choice-of-law clause provides, "To the extent not inconsistent with applicable law, this agreement ... shall be governed by the substantive laws (and expressly excluding the choice of law) of the State of Arkansas, provided that this shall not be construed to render the Arkansas Franchise Practices Act ... applicable to this Agreement or the Franchise."

We have held a similar choice-of-law provision selecting Nebraska law in a distributorship agreement precluded the Nebraska district court's application of the MFA's antiwaiver statute. *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 738 (8th Cir.1989) (en banc); *see Electrical & Magneto Serv. Co. v. AMBAC Int'l Corp.,* 941 F.2d 660, 663–64 (8th Cir.1991). Although a clarifying amendment states the antiwaiver statute applies to choice-of-law provisions, Minn.Stat.Ann. § 80C.21 (West Supp.1994), the amendment does not apply to agreements signed before the amendment's effective date. *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.,* 938 F.2d 870, 874 (8th Cir.1991). Randy Paulson and TCBY signed the franchise agreement before 1989. Further, we are not convinced that upholding the agreement's provision choosing Arkansas law violates a strong public policy in Arkansas. *See Electrical & Magneto Serv.,* 941 F.2d at 663–64.

■ RSP and the Paulsons next contend the district court committed error in denying their motion for additur or for a new trial on damages. We review the district court's denial of a new trial for abuse of discretion. *Johnson v. Cowell Steel Structures, Inc.,* 991 F.2d 474, 476 (8th Cir.1993). We examine the adequacy of the damage award under Arkansas law. *See id.* at 477. In Arkansas, a motion for a new trial based on the ver-

dict's inadequacy should be granted when a fair minded jury could not have reasonably fixed the award at the challenged amount. *Younts v. Baldor Elec. Co.*, 310 Ark. 86, 832 S.W.2d 832, 835 (1992).

■ RSP and the Paulsons' expert testified that RSP's original capitalization was $70,000 and RSP later spent another $132,005 to cover expenses related to equipment purchase, leasehold improvements, franchise fees, start-up costs, and operating losses. Subtracting the $25,000 realized from the store's sale, the expert testified losses totalled $177,005. TCBY disputed the extent of the damages, however. In awarding $70,000, the jury could have reasonably fixed the award at the amount of RSP's original capitalization.

■ Last, RSP and the Paulsons contend the district court erroneously declined to award them their attorneys' usual and customary hourly rates and all their costs. The district court based the attorney fee award on Arkansas hourly rates rather than higher Minneapolis rates charged by RSP and the Paulsons' attorneys. Generally, a reasonable hourly rate is the fee customarily charged in the court's locality for similar services. *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717, 719 (1990); *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140 (8th Cir.1982). Nevertheless, we have recognized this general rule "does not mean that out-of-town counsel must always be limited to lower local rates." *Avalon Cinema*, 689 F.2d at 140. RSP and the Paulsons argue they should be awarded the Minneapolis rate because they reasonably chose Minneapolis counsel after TCBY sued them. The Paulsons point out that they are Minnesota residents who were forced to litigate the case in Arkansas under the agreement's forum selection clause, and they were unfamiliar with Arkansas counsel. Although the district court could have properly based the fee award on the higher Minneapolis rates, we cannot say the district court abused its discretion in basing the fee award on the prevailing Arkansas rates.

■ RSP and the Paulsons sought over $25,000 in costs. The district court awarded only $3990.99, which represents the attendance fee and trial travel expenses for one

expert witness under 28 U.S.C. § 1821(b) and the costs for items listed in 28 U.S.C. § 1920. The district court disallowed expert fees, travel costs, and stipend fees for one of the two expert witnesses; travel costs and expenses incurred by the Paulsons and their attorneys in traveling to Little Rock for the trial; and other similar expenses. In the district court's view, these expenses were not recoverable under § 1920 because they are not listed in § 1920. RSP and the Paulsons contend § 1920 does not apply because the franchise agreement provides for recovery of "reasonable costs" independent of § 1920, and the disallowed costs are "reasonable costs." We agree that the franchise agreement provides for reimbursement of "reasonable costs" independent of § 1920, and thus remand for the district court to consider whether the disallowed costs are reasonable costs.

We reverse and remand the issue of costs to the district court, but affirm the district court on all other issues.