# IN THE COURT OF APPEALS OF IOWA

No. 22-0282
Filed December 21, 2022

**SUSAN OWEN,**
　　Plaintiff-Appellant,

**vs.**

**HUNZIKER & ASSOCIATES, INC., and STATE FARM FIRE AND CASUALTY COMPANY,**
　　Defendants-Appellees.
_____

　　Appeal from the Iowa District Court for Story County, Amy Moore, Judge.


　　A plaintiff appeals a grant of summary judgment for the defendant for claims of fraud and professional negligence. **AFFIRMED.**


　　Matthew Boles and Christopher Clark Stewart of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant.

　　Brian D. Torresi, Sarah K. Franklin, and Daniel J. Johnston of Dentons, Davis, Brown, PC, Des Moines, for appellee Hunziker & Associates, Inc.

　　Guy Richard Cook and Laura Martino of Grefe & Sidney, P.L.C., Des Moines, for appellee State Farm Fire and Casualty.


　　Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Susan Owen appeals a district court order granting summary judgment for Hunziker & Associates, Inc. (Hunziker). She claims that material fact questions exist concerning her claims alleging fraud and professional negligence that occurred while Hunziker's agent represented her in a real estate transaction. We determine summary judgment was appropriate. Accordingly, we affirm.

**I.      Background Facts & Proceedings**

This case involves Owen's attempts to recoup the costs of removing an underground oil tank discovered on her property in 2020. Because this case was decided on summary judgment, we have a limited record on appeal. However, the following facts can be gleaned from the provided record.

The circumstances underpinning this case date back to 2005, when Owen purchased a house from Jimmy Walden. Walden had lived in the home since 1987. In his seller disclosure statement, Walden indicated that there were no underground tanks located on the property. In an affidavit submitted for this case, he indicated he believed the house was heated exclusively by natural gas. John Newell, a licensed real estate broker employed by Hunziker, served as dual-agent for the sale. Newell's affidavit states he was informed by Walden that the home was heated by natural gas.

During an examination of the property, Owen noticed a piece of metal protruding from the ground. The record does not describe the object in any particularity. However, Owen asked Newell what the object was. According to Owen's affidavit, Newell "informed [Owen] it was nothing to worry about and that

[she] should put a plant in front of it."  An inspection completed at the request of Owen did not locate an underground tank.  Owen purchased the home.

Fast-forward fifteen years, Owen sought to sell the home in 2020.  The underground oil tank was then discovered by an inspection conducted by potential buyers.  Upon its removal, it was revealed that the metal object protruding from the ground was attached to the oil tank.

Owen filed a petition on October 28, 2020, seeking damages from Hunziker, the inspector, Walden, and her insurer.  Relevant to this appeal, she alleged Hunziker, via Newell, committed fraud and negligence by failing to inform her about the oil tank.  She later amended the petition in January 2021, although her negligence and fraud claims remained substantially unchanged.  Hunziker filed its answer on December 2, 2020, and later amended the answer on April 7, 2021.  Hunziker subsequently moved for summary judgment on July 28, which the court granted.  Owen appeals.

## II.  Standard of Review

"We review summary judgment rulings for correction of errors at law." *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019) (citation omitted).  "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law."  *Id.* (citation omitted).

## III.  Discussion

Owen contends the district court erroneously granted summary judgment for her claims involving fraud and negligence.  We examine each in turn.

### A. Fraud

Owen claims Newell committed fraud by failing to inform her of the underground oil tank and telling her not to worry about the protruding metal object. In order to survive summary judgment for fraudulent misrepresentation, Owen had to set forth evidence of "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent; (6) justifiable reliance; and (7) resulting injury." *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005). "Scienter and intent to deceive are closely related elements of the tort, and the same general analysis applies for each." *Van Sickle Const. Co. v. Wachovia Com. Mortg., Inc.*, 783 N.W.2d 684, 688 (Iowa 2010). "'Scienter and intent to deceive may be shown when the speaker has actual knowledge of the falsity of his representations or speaks in reckless disregard of whether those representations are true or false.'" *Id.* (quoting *Garren v. First Realty, Ltd.*, 481 N.W.2d 335, 338 (Iowa 1992)). Thus, Owen must demonstrate Newell knew of the underground oil tank or told her to ignore the metal object in reckless disregard for the truth. Owen has failed to demonstrate either.

First, nothing in the record before us indicates Newell had knowledge of the underground oil tank. Walden's seller disclosure statement noted there were no underground tanks on the property. Walden swore in his affidavit that he had no knowledge of the tank, instead believing his house was exclusively heated by natural gas. Newell also swore in his affidavit that he was informed the home was heated by gas. Owen points to Newell telling her to ignore the metal object in her yard as evidence Newell had knowledge of the underground tank. But seeing an object above ground does not mean Newell knew what lay beneath the surface. The object was apparently not obviously part of an underground tank, Owen's own

affidavit notes that she only discovered the object was connected to the tank during the tank's removal. Owen has failed to generate a material issue of fact that Newell had knowledge of the tank.

The record similarly fails to show Newell acted with reckless disregard. Owen premises this argument on the notion that Newell should not have told her to not to worry about the metal object unless he knew for certain what it was. However, that is not the standard for reckless disregard. "The fact that [the speaker] could have been more careful by making further inquiry is insufficient to prove that [he] acted in reckless disregard of the truth." *Garren*, 481 N.W.2d at 338. Given the lack of any information suggesting an underground tank existed on the property, ignoring an out-of-place metal object—undescribed in the record before us—is insufficient to generate a material fact on whether Newell acted with reckless disregard.

### B. Negligence

Owen claims Newell acted negligently when he told her not to worry about the metal object. The district court granted summary judgment after finding Owen had failed to demonstrate the applicable standard of care for individuals in Newell's profession.

Owen's negligence claim is based on Newell's comments about the metal object in his capacity as a real estate broker—a licensed professional. Licensed professionals, unless they hold themselves out to have higher skill, are generally held to the standards of "members of that profession or trade in good standing." *Menzel v. Morse*, 362 N.W.2d 465, 471 (Iowa 1985) (quoting Restatement (Second) of Torts § 299A). As such, Owen would need to "produce evidence to

show the standards of conduct and practices, or bench marks, that establish the requisite skill and knowledge of members in good standing in the defendant's trade or profession." *Id.* That evidence can come in any number of forms, including expert testimony, licensing standards, and codes of professional responsibility. *Id.* In *Morse*, the court held that the defendants had established the National Association of Realtors Code of Ethics were the "accepted standards in the profession and required study for, and included in, the written examinations leading to licensing in Iowa." *Id.* at 472.

Here, Owen produced no evidence of the applicable standards Newell was expected to abide by. The record is devoid of any professional licensing standards, designated experts, or ethical codes. And we note that Owen failed to designate an expert witness in a timely manner. *See* Iowa Code § 668.11(a) (2020); *see also Morse*, 362 N.W.2d at 473 (noting that the ethical code was proof of the standard of care when the defendant admitted its applicability). While Owen points to the Trial Scheduling and Discovery Plan that sets out the plaintiff needs to designate experts at least 210 days prior to trial—which had yet to be set in this case—she omits the entirety of the language contained in the plan:

> A party who intends to call an expert witness . . . shall certify to the court and all other parties the expert's name, subject matter of expertise, and qualifications, within the following time period, *unless the Iowa Code requires an earlier designation date (see, e.g.*, *Iowa Code section 668.11).*

(emphasis added). Thus, the plan expressly notes that section 668.11 controls the schedule. That section requires expert designation within 180 days of the defendant's answer, which has long since expired. Thus, there is no evidence in the record establishing the appropriate standard of care that Newell owed Owen.

But Owen claims that it was unnecessary to establish a standard of care for a licensed real estate broker. It is true that not all professional negligence claims require the plaintiff to establish the standard of care for that profession. Such evidence is unnecessary when ordinary members of the public are capable of understanding the facts of the case and drawing conclusions from them. *Schlader v. Interstate Power Co.*, 591 N.W.2d 10, 14 (Iowa 1999).

But here, laypersons could not readily discern whether Newell acted negligently. Such cases are limited to cases of obvious misconduct. For instance, our supreme court held that expert testimony was unnecessary to decide whether a vendor misrepresented the extent and frequency of water damage to a potential purchaser of a home—laypersons can understand that minimizing the frequency of water damage is misrepresentation. *Putnam v. Walther*, 973 N.W.2d 857, 864 (Iowa 2022). In another case, the supreme court found that a chemical burn caused by sodium pentothal escaping the vein used for anesthesia was within layperson understanding because it was within common experience. *Welte v. Bello*, 482 N.W.2d 437, 441 (Iowa 1992). Laypersons experience intravenous applications of medicine frequently enough to understand something went wrong when such practice caused a chemical burn. *Id.*

Here, it is not obvious that ignoring an unknown metal object breached the standard of care expected of licensed real estate brokers. Laypersons only infrequently interact with real estate agents. Without some evidence of the standard of care, it is unclear whether, or to what extent, a real estate broker would be expected to know about underground storage tanks that went undiscovered for

over thirty years and were missed by professional inspectors. Summary judgment was appropriately granted.[1]

**AFFIRMED.**

---

[1] On appeal, Owen also asserted Newell's actions as her broker amount to a breach of fiduciary duties, an allegation she contends is subsumed in her negligence claim. However, her original and amended petitions do not contain allegations concerning fiduciary duties. In fact, she included Newell and Walden together in her petition, alleging, "Defendants Walden and Hunziker owed a duty to the Plaintiff to disclose" the underground tank. Lumping Newell, a professional, and Walden, a layperson, together in her negligence claim undercuts her contention the claim involved Newell's fiduciary duties. In any event, the district court did not rule on the matter. As such, Owen's claim as it relates to Newell's purported fiduciary duties is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Even if it were preserved, Owen did not submit any evidence suggesting what, if any, fiduciary duties are owed by a real estate broker to a client. Thus, the claim would fail for the same reasons as explained in this section.